# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **A. Huda Farouki,** | |
| **Plaintiff,** | **Civil Action No. 08-cv-2137 (RJL)** |
| **v.** | |
| **Petra International Banking Corp.** | |
| **Petra Bank** | |
| **Randolph B. Old,** | |
| **Defendants.** | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................. 1

FACTS ................................................................................................................................. 2

ARGUMENT ....................................................................................................................... 5

    I.    This Court Should Exercise Personal Jurisdiction over Defendants ..................... 5

        A.    Defendants Bear a Heavy Burden on Their Motion to Dismiss ............... 5

        B.    This Court Should Exercise Personal Jurisdiction over Petra Bank .......... 6

        C.    The Amended Complaint Establishes This Court's Jurisdiction
over Mr. Old .......................................................................................... 12

        D.    Plaintiff Requests An Opportunity to Conduct Jurisdictional
Discovery .............................................................................................. 15

    II.    The Amended Complaint Clearly Sets Forth Grounds for Finding Venue
Proper in this District .................................................................................... 16

    III.    The Amended Complaint Clearly Sets Forth Claims On Which Relief Can
Be Granted .................................................................................................... 21

        A.    Defamation Is Adequately Pled ............................................................. 21

        B.    Injurious Falsehood Is Adequately Pled ................................................ 24

        C.    Laches Is Adequately Pled .................................................................... 26

        D.    Promissory Estoppel Is Adequately Pled ............................................... 26

        E.    Tortious Interference with Contract Is Adequately Pled ........................ 27

CONCLUSION ................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Asahi Metal Industry Co. v. Superior Court*,
  480 U.S. 102 (1987)....................................................................................................... 6

*Beaty v. Sellinger*,
  306 F.3d 914 (9th Cir. 2002)........................................................................................ 26

*Blodgett v. University Club*,
  930 A.2d 210 (D.C. 2007)............................................................................................ 22

\* *Burger King v. Rudzewicz*,
  471 U.S. 462 (1985)................................................................................................10, 11

*Cashen v. Integrated Portfolio Management*
  No. 08-0268, 2008 U.S. Dist. LEXIS 95145 (D. Ill. Nov. 2008)......................... 28

*Chalabi v. Hashemite Kingdom of Jordan*................................................................ 16
  503 F. Supp.2d 267 (D.D.C. 2007), *aff'd*, 543 F.3d 725 (D.C. Cir. 2008)

*Chase v. Pan-Pacific Broadcasting, Inc.*,
  617 F. Supp. 1414 (D.D.C. 1985) ................................................................................ 15

*Chrysler Corp. v. General Motors Corp.*,
  589 F. Supp. 1182 (D.D.C. 1984)................................................................................. 7

*Clampitt v. American Univ.*,
  957 A.2d 23 (D.C. 2008)............................................................................................... 22

\* *Crane v. New York Zoological Society*,
  894 F.2d 454 (D.C. Cir. 1990) ...........................................................................18, 19, 24

*Croixland Props. Ltd. P'ship v. Corcoran*,
  174 F.3d 213 (D.C. Cir. 1999) ...................................................................................... 22

*Cronk v. Intermountain Rural Elec. Ass'n*,
  765 P.2d 619 (Colo.App.1988) .................................................................................... 28

*Doe v. Chao*,
  540 U.S. 614 (2004)....................................................................................................... 23

\* *El Fadl v. Central Bank of Jordan*,
  75 F.3d 668.................................................................................................2, 6, 7, 15, 16

TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Erickson v. Pardus,*
　　551 U.S. 89 (2007) ...........................................................................21, 23

*GTE New Media Servs. v. BellSouth Corp.,*
　　199 F.3d 1343 (D.C. Cir. 2000) ..................................................... 5, 16

*Gulf Oil Corp. v. Gilbert,*
　　330 U.S. 501 (1947)............................................................................ 17

*Helmer v. Doletskaya,*
　　393 F.3d 201 (D.C. Cir. 2004) ....................................................... 5, 16

*Hickman v. Winston County Hosp. Bd.,*
　　508 So.2d 237 (Ala. 1987) ................................................................ 28

*Holt v. Boyle Brothers,*
　　217 F.2d 16 (D.C. 1954) .................................................................... 24

*Houlihan v. World Wide Assoc. of Specialty Programs and Schools,*
　　No. 04-1161, 2006 WL 2844190 (D.D.C. Sept. 2006)........................ 23

*International Shoe v. Washington,*
　　326 U.S. 310 (1945)......................................................................... 6, 15

* *Johnson-Tanner v. First Cash Financial Services, Inc.,*
　　239 F. Supp. 2d 34 (D.D.C. 2003)................................................... 7, 10

*Katradis v. Dav-El of Washington, D.C.,*
　　702 F. Supp. 1 (D.D.C. 1987) ........................................................... 21

*Kauffman v. Int'l Brotherhood of Teamsters,*
　　950 A.2d 44 (2008)............................................................................ 27

*Knowledgeplex, Inc. v. Metonymy, Inc.,*
　　574 F. Supp. 2d 164 (D.D.C. 2008)..................................................... 5

*Laffey v. Northwest Airlines, Inc.*
　　321 F. Supp. 1041 (D.D.C. 1971)....................................................... 18

*LaPrade v. Abromson,*
　　No. 97-0010, 2006 WL 3469532 (D.D.C. Nov. 29, 2006) .................. 24

* *Manifold v. Wolf Coach,*
　　231 F. Supp. 2d 58 (D.D.C. 2002)...................................... 11, 12, 14, 19, 21

TABLE OF AUTHORITIES
(continued)

**Page(s)**

* *McQueen v. Woodstream Corporation*,
    244 F.R.D. 26 (D.D.C. 2007) .................................................................................20, 21

*Messina v. Fontana*,
    260 F. Supp. 2d 173 (D.D.C. 2003), *aff'd,* 439 F.3d 755 (D.C. Cir. 2006) .......................... 22

*Moncrief v. Lexington Herald-Leader Co.*,
    807 F.2d 217 (D.C. 1986) ................................................................................... 14

* *Mouzavires v. Baxter,*
    434 A.2d 988 (D.C. 1981) .................................................................................. 7, 11

*Muir v. Navy Federal Credit Union*,
    529 F.3d 1100 (D.C. Cir. 2008) ..........................................................................21, 23

*NAACP v. NAACP Legal Defense and Education* Fund,
    753 F.2d 131 (D.C. Cir. 1985) ................................................................................ 26

*Neshewat v. Salem*,
    173 F.3d 357 (6th Cir. 1999) ................................................................................. 26

* *Nickens v. Labor Agency of Metropolitan Washington*,
    600 A.2d 813 (D.C. 1991) .................................................................................28, 29

*November 2001 v. Fame Jeans*,
    525 F.3d 8 (D.C. Cir. 2008) ................................................................................... 5

*Oparaugo v. Watts*,
    884 A.2d 63 (D.C. 2005) ..................................................................................... 22

*Overseas Partners, Inc. v. Progen Musavirlik Ve Ynetim Hizmetleri, Ltd. Sikerti*,
    15 F. Supp. 2d 47 (D.D.C. 1998) ............................................................................. 5

*Pain v. United Tech. Corp.*,
    637 F.2d 775 (D.C. Cir. 1980) ............................................................................... 17

*Ramamurti v. Rolls-Royce Ltd.*,
    454 F. Supp. 407 (D.D.C. 1978), *aff'd by Nalls v. Rolls-Royce Ltd.*, 612 F.2d 587
    (D.C.Cir. 1980) ............................................................................................... 6

*Relf v. Gasch*,
    511 F.2d 804 (D.C. Cir. 1975) ............................................................................... 18

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ........................................................................................... 21

TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sheikh v. Mr. K's Restaurant, Inc.*,
  No. 04-0515, 2005 WL 1387591 (D.D.C. Jun 10, 2005) .................................................. 11

*Shoppers Food Warehouse v. Moreno*,
  746 A.2d 320 (D.C. 2000) .......................................................................................... 13

*Slovinec v. American University*,
  565 F. Supp. 2d 114 (D.D.C. 2008) .............................................................................. 24

*Smith v. Jenkins*,
  452 A.2d 333 (D.C. 1982) ............................................................................................ 14

*Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.*,
  565 A.2d 285 (D.C. 1989) ............................................................................................ 28

*Tooley v. Napolitano*,
  No. 07-5080, 2009 WL 414593 (D.C. Cir. Feb. 20, 2009) ............................................... 5

*Trimble v. City and County of Denver*,
  697 P.2d 716 (Colo. 1985) ........................................................................................... 28

*Tye v. Finkelstein*,
  160 F. Supp. 666 (D.Mass. 1958) ................................................................................. 28

*Unidex Sys. Corp. v. Butz Eng. Corp.*,
  406 F. Supp. 899 (D.D.C. 1976) ................................................................................... 15

*United States Surgical Corp. v. Imagyn Med. Tech., Inc.*,
  25 F. Supp. 2d 40 (D. Conn. 1998) ..........................................................................19, 20

*Wallace v. Skadden Arps Slate Meagher & Flom*,
  715 A.2d 873 (D.C. 1998) ............................................................................................ 24

*Whetstone Candy Co. v. Nat'l Consumers League*,
  360 F. Supp. 2d 182 (D.D.C. 2005) .............................................................................. 25

**STATUTES**

28 U.S.C. § 1391(a)(2) ....................................................................................................... 20

28 U.S.C. § 1391(b)(2) ..................................................................................................17, 20

D.C. CODE § 13-334(b) .................................................................................................6, 12, 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

D.C. CODE § 13-423 ........................................................................................................ 6, 13

\* D.C. CODE § 13-423(a)(1) .............................................................................. 6, 11, 12, 13, 14

D.C. CODE § 13-423(a)(3).......................................................................................................... 13

D.C. CODE § 13-423(a)(3) and (4)........................................................................................13, 14

D.C. CODE § 13-423(a) ................................................................................................................ 6

**OTHER AUTHORITIES**

\* FED. R. CIV. P. 8(a) ................................................................................................................ 29

FED. R. CIV. P. 8(a)(2) ............................................................................................................ 21

FED. R. CIV. P. 26(f) ................................................................................................................ 16

Federal Rules of Bankruptcy Procedure, Rule 6009 ................................................................ 27

RESTATEMENT (SECOND) OF TORTS § 575 .............................................................................. 23

RESTATEMENT (SECOND) OF TORTS § 623A ............................................................................ 25

*\* Authorities marked with an asterisk are those upon which Plaintiff principally relies in this brief.*

## INTRODUCTION

Every claim in this case relates in a fundamental way to a written guaranty that was negotiated in the District of Columbia, that was executed in the District of Columbia, and that expressly states that it will be governed by the laws of the District of Columbia.  One of the defendants, Petra International Banking Corp. ("PIBC"), concedes that it is subject to personal jurisdiction in the District of Columbia.  This is hardly surprising, given that PIBC is incorporated pursuant to a statute enacted by the United States Congress, had its principal place of business in the District of Columbia for ten years, and met with the plaintiff in the District of Columbia both to extract the guaranty from him in the first place and to release him from it seven years later.

A second defendant, Petra Bank, denies that it is subject to personal jurisdiction here. Yet, Petra Bank created PIBC here, has been its majority stockholder at all relevant times, was using PIBC as its agent when the guaranty was released and is using PIBC as its agent again today.  Petra Bank freely admits in its papers that it and PIBC are both now controlled by the same powerful entity (the Central Bank of Jordan), which has treated them as nothing more than two pockets in the same pair of pants, transferring the guaranty from PIBC to Petra Bank when it wanted to make life difficult for the plaintiff in Jordan, and transferring the guaranty from Petra Bank back to PIBC now that it wants to pursue the plaintiff in this country.  In addition, three representatives of Petra Bank and the Central Bank, one of whom is alleged to have been a member of the liquidation committee appointed by the Jordanian government to run Petra Bank, met with Mr. Farouki on numerous occasions <u>in the District of Columbia</u> to discuss the debt owed to PIBC.

A third defendant, Randolph Old, also denies that he is subject to personal jurisdiction here.  Yet, for the last nineteen years, Mr. Old has served as the "General Manager" of PIBC –

an entity that initially had its principal place of business in the District of Columbia and that, even today, concedes it is subject to personal jurisdiction in the District of Columbia – and Mr. Old met with the Plaintiff in the District of Columbia to negotiate the release of the guaranty – the very conduct that Mr. Old later lied about to give rise to the tort claims asserted against him in this action.

For all of these reasons, this Court should reject the contentions of Petra Bank and Mr. Old that they are not subject to personal jurisdiction in this District.  Defendants have already conceded that the litigation will proceed in this District as against PIBC.  This Court should supply the rule of law and resolve all of the claims among all of the parties to this dispute in a single proceeding.  *See* Section I of Argument.[1]  Similarly, this Court should reject Mr. Old's contention that this is not an appropriate venue for resolving this dispute.  *See* Section II of Argument.  Finally, for the reasons set forth below, the defendants are incorrect when they assert that certain of the counts in the Amended Complaint fail to state claims upon which relief can be granted.[2]  *See* Section III of Argument.

## FACTS

In 1983, Petra Bank formed PIBC pursuant to a statute enacted by the United States Congress and placed its principal place of business in the District of Columbia.  Amended Complaint ("Amend. Compl.") ¶ 8.  In 1986, PIBC requested that Mr. Farouki guaranty a loan

---

[1] If the Court has any concerns regarding its personal jurisdiction over the Defendants in this action, at a minimum, Plaintiff respectfully requests that the Court defer ruling on the motion to dismiss until Plaintiff can conduct discovery on that question.  To that end, Plaintiff requested that Defendants consent to extend the deadline for filing this response until jurisdictional discovery could be conducted.  Defendants rejected this request and notified Plaintiff that they would oppose any jurisdictional discovery in this matter.  *See El Fadl v. Central Bank of Jordan*, 75 F.3d, 668 (D.C. Cir. 1996) (holding that there should not have been a ruling on a motion to dismiss claims against Petra Bank for lack of jurisdiction until the plaintiff had been allowed to conduct jurisdictional discovery); *see also* footnote 12.

[2] Plaintiff's Amended Complaint is attached hereto is Exhibit A, which Plaintiff is endeavoring to file contemporaneously with this memorandum.

that PIBC had extended to a company controlled by Mr. Farouki called American Export Group International Services, Inc. or "AEGIS."  Amend. Compl. ¶ 2.  At PIBC's invitation, this guaranty (the "AEGIS Guaranty") was negotiated and executed in the District of Columbia.  Amend. Compl. ¶¶ 2, 19.  The AEGIS Guaranty expressly states that it is governed by the laws of the District of Columbia, and its forum selection clause contemplates that disputes over the agreement will be resolved in this Court.  Amend. Compl. ¶¶ 2, 21.

In 1989, the Jordanian government took over Petra Bank and asserted control of PIBC through Petra Bank's controlling stock position in PIBC.  Amend. Compl. ¶¶ 8, 26-27; *see also* Declaration of Nafeth A. Al Fattah ("Decl.") ¶ 4.  The Central Bank of Jordan (the "Central Bank") was chosen to administer the liquidation of Petra Bank.  Amend. Compl. ¶ 9.  Since the takeover, Petra Bank has been run by a Liquidation Committee appointed by the Jordanian government.  *Id.*  On at least one occasion after the takeover, PIBC loaned new funds to AEGIS under the existing loan facility, using funds that Petra Bank advanced to PIBC for this purpose.  Amend. Comp. ¶ 27.

After the takeover, three different representatives of Petra Bank and the Central Bank traveled from Jordan to the District of Columbia to look after Petra Bank's interests.  Amend. Compl. ¶¶ 28-30, 33-34.  While in the District of Columbia, each of these representatives of Petra Bank and the Central Bank met with Mr. Farouki to discuss the debt that he had guaranteed.  Amend. Compl. ¶¶ 28-30, 33-34.  Each of the representatives of Petra Bank and the Central Bank made clear that the reason why he was interested in whether PIBC was going to get repaid was because what he really cared about was whether Petra Bank would recover the money it had made available to AEGIS through PIBC.  *Id.*

The first of these representatives of Petra Bank and the Central Bank was Bassam

Anabtawi, who met with Mr. Farouki in the District of Columbia approximately a dozen times and explicitly discussed a release of the AEGIS Guaranty with him.    Amend. Compl. ¶¶ 28-30. The second was Dr. Mohammed Saeed El-Nabulsi, the Governor of the Central Bank.  Amend. Compl. ¶ 33.  The third was Dr. Michel Marto, the Deputy Governor of the Central Bank. Amend. Compl. ¶ 34.  On information and belief, at the time of their meetings with Mr. Farouki in the District of Columbia, Dr. Nabulsi and Dr. Marto were both members of the Liquidation Committee that had been appointed by the Jordanian government to run Petra Bank.  Amend. Compl. ¶¶ 33-34.

As PIBC and Petra Bank wound down their operations between 1989 and 1993, PIBC became Petra Bank's U.S. based collections agent.  *See* Amend. Compl. ¶¶ 8, 10, 71.  In 1993, PIBC ostensibly assigned its rights under the AEGIS Guaranty to Petra Bank and now, in 2008, to employ the services of its U.S. collections agent yet again, Petra Bank has ostensibly assigned those rights back to PIBC.  *See* Decl. ¶ 7.

In January 1990, through some combination of Central Bank "supervision" and Petra Bank control, Randolph B. Old was appointed General Manager of PIBC in the District of Columbia.  *See* Amend. Compl. ¶¶ 10, 31; Decl. ¶ 4; Answer ¶ 10.  Mr. Old renegotiated the terms of the AEGIS Guaranty with Mr. Farouki in the District of Columbia.  Amend. Compl. ¶ 37.  In 1993, after certain conditions were met, and in exchange for fair consideration, Mr. Old released Mr. Farouki's remaining obligations under the AEGIS Guaranty.  Amend. Compl. ¶ 43. The release was confirmed in a written document from Mr. Old to Mr. Farouki, but with the passage of time Plaintiff can no longer locate this document.  *Id.*

Now, after being silent for more than fifteen years, PIBC, Petra Bank and Mr. Old have suddenly asserted that Mr. Farouki's obligations under the AEGIS Guaranty remain outstanding.

Amend. Compl. ¶¶ 1, 55.  Petra Bank has sent at least one collection notice to Mr. Farouki in the United States and has wrongfully seized certain of Mr. Farouki's property in Jordan.  Amend. Compl. ¶¶ 1, 50, 52-53.  Even now, the Defendants are advancing their collection efforts in the United States through PIBC's Counterclaim in this action ("Counterclaim").  Decl. ¶ 7.

## ARGUMENT

**I.      This Court Should Exercise Personal Jurisdiction over Defendants**

**A.      Defendants Bear a Heavy Burden on Their Motion to Dismiss**

In assessing Defendants' Motion to Dismiss ("Motion"), the Court should read the Amended Complaint generously, accepting as true all facts alleged in the Amended Complaint, and drawing all reasonable inferences in favor of Plaintiff.  *Tooley v. Napolitano*, No. 07-5080, 2009 WL 414593, at *3 (D.C. Cir. Feb. 20, 2009); *November 2001 v. Fame Jeans,* 525 F.3d 8, 15 & n. 3 (D.C. Cir. 2008).  So long as the pleadings suggest a "plausible scenario" entitling Plaintiff to relief, the Court should not dismiss the action.  *Tooley*, 2009 WL 414593 at *3.

In determining whether personal jurisdiction exists, the Court should resolve all factual disputes in Plaintiff's favor.  *See Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004).  "A plaintiff need only present a *prima facie* case that personal jurisdiction exists in order to survive a motion to dismiss for lack of personal jurisdiction."  *Overseas Partners, Inc. v. Progen Musavirlik Ve Ynetim Hizmetleri, Ltd. Sikerti*, 15 F. Supp. 2d 47, 50 (D.D.C. 1998).  To establish personal jurisdiction over a non-resident, the Court must engage in a two-part inquiry.  The Court must first determine whether the forum's long-arm statute confers jurisdiction over the defendant and then determine whether it can exercise jurisdiction over the defendant without violating the Due Process Clause of the United States Constitution.  *Knowledgeplex, Inc. v. Metonymy, Inc.*, 574 F. Supp. 2d 164, 168 (D.D.C. 2008) (*citing GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).

As alleged in the Amended Complaint and explained in detail below, this two-part test is satisfied as to all Defendants.  First, this Court has personal jurisdiction over all Defendants pursuant to D.C. CODE §§ 13-423(a) and 13-334(b) because the claim for relief relates to Defendants' transacting business in the District of Columbia and relates to a contract entered into in the District of Columbia and governed by the laws of the District of Columbia.[3]  Second, this Court's exercise of personal jurisdiction over Defendants satisfies constitutional requirements because Defendants have "purposefully established minimum contacts" in the District of Columbia, *see Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108-09 (1987), such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *See International Shoe v. Washington*, 326 U.S. 310, 316 (1945).

**B.     This Court Should Exercise Personal Jurisdiction over Petra Bank**

Section 13-423(a)(1) of the District of Columbia's long-arm statute provides that "a District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or

---

[3]  In addition, D.C. CODE § 13-334(b), Service on Foreign Corporations, states:

When a foreign corporation transacts business in the District without having a place of business or resident agent therein, service upon any officer or agent or employee of the corporation in the District is effectual as to *actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia* or growing out of any tort committed in the District.  (emphasis added)

Although § 13-334 is a service of process provision, it also contains jurisdictional provisions.  As noted by this court in *Ramamurti v. Rolls-Royce Ltd.*, 454 F. Supp. 407, 409 n.2 (D.D.C. 1978), *aff'd by Nalls v. Rolls-Royce Ltd.*, 612 F.2d 587 (D.C. Cir. 1980),

Section 334 is the predecessor to the "modern" D.C. long-arm statute, adopted by Congress in 1970.  District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No. 91-358, § 132(a), 84 Stat. 473 (codified at D.C. CODE §§ 13-401 to 434 (1973)).  Section 334 continues to exist as a basis for personal jurisdiction along side the more comprehensive long-arm provisions in chapter 4 of title 13 of the D.C. Code.  *See* D.C. Code § 13-401 (1973).

*Cf. El Fadl v. Central Bank of Jordan*, 75 F.3d 668, 674 (D.C. Cir. 1996) (recognizing that District of Columbia courts have construed § 13-334 to be a jurisdictional statute).

*by an agent*, as to a claim for relief arising from the person's transacting any business in the District of Columbia." D.C. CODE § 13-423(a)(1) (2001) (emphasis added).  Section 13-423(a)(1) is given an expansive interpretation that is "coextensive with the due process clause." *Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C. 1981).  Thus, the sole inquiry is whether the "non-resident defendant[s] had sufficient minimum contacts with the jurisdiction in order to satisfy due process." *Id.*  Mr. Farouki's claims against Petra Bank arise directly from Petra Bank's involvement in PIBC's banking activities in the District of Columbia.

If parent and subsidiary "are not really separate entities, or one acts as an agent of the other . . . the local subsidiary's contacts can be imputed to the foreign parent." *Johnson-Tanner v. First Cash Financial Services, Inc.*, 239 F. Supp. 2d 34, 38 (D.D.C. 2003), citing *El Fadl v. Central Bank of Jordan*, 75 F.3d, 668, 676 (D.C. Cir. 1996); *accord Chrysler Corp. v. General Motors Corp.,* 589 F. Supp. 1182, 1200-01 (D.D.C. 1984).  "In such cases, the foreign parent will be found to be transacting business in the forum state through the activities of its subsidiary." *Johnson-Tanner*, 239 F. Supp. 2d at 38.

Given the heavy burden Defendants bear on a motion to dismiss, the allegations in the Amended Complaint are more than sufficient for this Court to conclude that, since at least 1989, Petra Bank and PIBC have not really been separate entities, and that PIBC has been an agent of Petra Bank.  Either way, Petra Bank has sufficiently participated in PIBC's business activities in the District of Columbia, particularly with respect to the AEGIS Guaranty, to satisfy the District of Columbia's long-arm statute and satisfy Constitutional "minimum contacts" requirement.  *See* Amend. Compl. ¶ 8 (Petra Bank was majority stockholder of PIBC); ¶¶ 27-36 (representatives of Petra Bank met with Mr. Farouki in the District of Columbia to discuss the AEGIS Loan and AEGIS Guaranty); ¶¶ 10, 31 (Petra Bank appointed Mr. Old to be General Manager of PIBC in

1990), ¶¶ 37-43 (Mr. Old negotiated the release of the AEGIS Guaranty), ¶¶ 8, 10 (PIBC and Mr.

Old have been collecting debts for Petra Bank since at least 1989 and 1993 respectively), ¶ 27

(on a regular basis, PIBC management consulted or sought approval from Petra Bank's

management committee with respect to various PIBC business decisions) (funding for the

AEGIS credit facility came from Petra Bank), ¶ 8 (Petra Bank acquired all of PIBC's assets),

¶ 49 (Petra Bank asserts that these assets included PIBC's rights under the AEGIS Guaranty).

Defendants suggest in their Motion that Petra Bank's relationship to PIBC is that of an

ordinary, garden-variety, parent and subsidiary.  *See* Motion at 20-21.  Defendants freely admit,

however, that, in 1989, at the Federal Reserve's request, the Central Bank of Jordan, which had

already placed Petra Bank in liquidation under its supervision, also "took control of and stood

behind" PIBC and "contributed substantial funds to PIBC to meet its depository and other

obligations."  *See* Decl. ¶¶ 1-3.  The Amended Complaint alleges that, in fact, these funds, which

were eventually loaned to AEGIS, went from the Central Bank to PIBC <u>via Petra Bank</u>.  Amend.

Compl. ¶ 27.  Defendants also freely admit that, in 1993, in return for the substantial financial

support the Central Bank had provided PIBC, PIBC transferred the AEGIS Guaranty, not to the

Central Bank, but to Petra Bank.  *See* Decl. ¶ 7.  This admission tends to support the allegation in

the Amended Complaint that the funds were passed from the Central Bank to PIBC via Petra

Bank.  Finally, Defendants freely admit that, just within the last few months, to suit the banks'

ever-shifting purposes, Petra Bank has transferred the AEGIS Guaranty back to PIBC "for

purposes of collection."  *See* Decl. ¶ 7.  All of these facts suggest that the relationship between

Petra Bank and PIBC is anything but ordinary and, indeed, that they are both now nothing but

commercial appendages of the Central Bank, which pays no real attention to their separate

corporate existences.

The Central Bank could only have taken over PIBC through an exercise of Petra Bank's controlling ownership of PIBC stock, which Defendants admit has been retained at all times. *See* Decl. ¶ 2.  Defendants state that Petra Bank is managed by its General Manager "under the Central Bank's supervision" and that PIBC "has a board of directors appointed by the Central Bank."[4]  Regardless of the specific management structures in place, it is clear that, since 1989, the Central Bank has controlled PIBC through Petra Bank's position as its controlling shareholder and dominates both companies.

After the takeover, several representatives of Petra Bank and the Central Bank traveled from Jordan to the District of Columbia to look after Petra Bank's interests here.  Amend. Compl. ¶¶ 28-30, 33-34.  At that time, additional funding for the AEGIS Loan came from Petra Bank, and these representatives of the Central Bank and Petra Bank stood side-by-side with PIBC personnel as that additional funding was negotiated in the District of Columbia.  All three of these visiting representatives discussed the AEGIS loan with Mr. Farouki.  Amend. Compl. ¶¶ 28-30, 33-34.  At least one of these representatives, Mr. Anabtawi, who met with Mr. Farouki in the District of Columbia approximately a dozen times, explicitly discussed the release of the AEGIS Guaranty with Mr. Farouki.  Amend. Compl. ¶ 30.  The other two representatives, Dr. Nabulsi and Dr. Marto, were the Governor and Deputy Governor respectively of the Central Bank – the entity that had been chosen to administer the liquidation of Petra Bank.  On information and belief, at the time of their meetings with Mr. Farouki in the District of Columbia, Dr. Nabulsi and Dr. Marto were both members of the Liquidation Committee that had been appointed by the Jordanian government to run Petra Bank.

---

[4] *See* Decl. ¶¶ 2, 4.  The method by which the Central Bank could appoint all the directors of PIBC without the involvement or authority of Petra Bank is a mystery given that Petra Bank continues to be PIBC's majority shareholder.

These meetings demonstrate the substantive erosion of PIBC's and Petra Bank's separate identities after the Central Bank takeover.  The Central Bank, which had been appointed to administer the liquidation of Petra Bank, funded PIBC's loan commitments through Petra Bank and treated the repayment of those loans to PIBC as the equivalent of repayment to Petra Bank. *See* Motion at 21; Amend. Compl. ¶ 34.  High officials of the Central Bank, alleged to be members of the Liquidation Committee that ran Petra Bank, met with Mr. Farouki in the District of Columbia.  These discussions, which eventually led to a release of the AEGIS Guaranty, continued in the District of Columbia through the "General Manager" of PIBC, put in place by the Central Bank through Petra Bank's controlling stock ownership of PIBC.  This Court in *Johnson-Tanner*, held that "the primary focus of the alter ego analysis is to ascertain whether the parent corporation so dominated the subsidiary corporation as to negate its separate personality." 239 F. Supp. 2d at 40.  In this case, the Central Bank's dominance over both Petra Bank and PIBC eroded their separate identities.

Indeed, the meetings that Mr. Anabtawi, Dr. Nabulsi, and Dr. Marto had with Mr. Farouki in the District of Columbia were direct contacts between Petra Bank and the District of Columbia, without the agency of PIBC.  By themselves, those contacts are sufficient to render Petra Bank subject to personal jurisdiction here.

The Amended Complaint pleads sufficient minimum contacts with the District of Columbia to pass constitutional muster under the U.S. Supreme Court's personal jurisdiction jurisprudence.  In *Burger King v. Rudzewicz*, 471 U.S. 462 (1985), the Supreme Court found specific personal jurisdiction in a Florida court with respect to Michigan residents who, using interstate communications, entered into an agreement with the Florida-based Burger King Corporation to set up a franchise in Michigan.  Finding jurisdiction proper in Florida, the court

explained:

> where the defendant deliberately has engaged in significant activities within a State, or has created *continuing obligations between himself and residents of the forum*, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.  (emphasis added)

*Id.* at 475-76.

The Supreme Court noted that a single act can support jurisdiction as long as the defendant creates a "substantial connection" with the forum.  *Id.* at n. 18.   Moreover, a nonresident defendant need not ever be physically present in the District to create a substantial connection to the District of Columbia.  *Sheikh v. Mr. K's Restaurant, Inc.*, 2005 WL 1387591 at *3 (D.D.C. Jun 10, 2005); *Mouzavires*, 434 A.2d at 992; *see Burger King*, 471 U.S. 462.

In *Mouzavires,* the District of Columbia Court of Appeals held that nonresident defendants were transacting business in the District within the meaning of § 13-423(a)(1), and that jurisdiction over the defendants was proper, where the defendants (1) solicited the plaintiff's services in the District to be performed in part in the District, (2) entered into a contract that had substantial connection with the District by contacting the plaintiff in the District via phone and mail, and (3) sent partial payment for services performed to the plaintiff in the District.  *See Mouzavires*, 434 A.2d at 994-97.  The court noted that a nonresident defendant need not be physically present in the District, and that forum contacts via mail or telephone can establish jurisdiction where the defendants "voluntarily engaged in a transaction which had a substantial connection with the District and which they foresaw would have consequences here."  *Id.* at 997.

In *Manifold v. Wolf Coach*, 231 F. Supp. 2d 58 (D.D.C. 2002), a resident of Maryland, employed as a television cameraman for Fox Television in the District of Columbia, was

electrocuted in Alexandria, Virginia by equipment installed on his news van by Wolf Coach, Inc., a Massachusetts company.  This Court exercised personal jurisdiction over Wolf Coach based on negotiations between Fox representatives in the District of Columbia and defendant's representatives in Massachusetts, "including faxes and phone calls from Massachusetts to the District," and one meeting in the District between the two companies.  This Court concluded that its exercise of personal jurisdiction in *Wolf Coach* did not offend the "traditional notions of fair play and substantial justice" because the defendant negotiated a contract with an organization based in the District of Columbia.  231 F. Supp. 2d at 62.

Similarly, in this case, Petra Bank directed its business activities to the District of Columbia when it provided financial support and ongoing oversight to PIBC, not only from Jordan but, in the numerous visits from Mr. Anabtawi, Dr. Nabulsi and Dr. Marto, from <u>directly within the District of Columbia</u>.  Petra Bank's business activities were further directed to the District of Columbia when it acquired PIBC's putative rights under the AEGIS Guaranty, an agreement negotiated, executed and released in the District of Columbia and expressly governed by the laws of the District of Columbia.  Through all of these activities, Petra Bank has enjoyed the benefits and protections of the District of Columbia's laws and concomitantly must be subject to this Court's jurisdiction in the District of Columbia.[5]

### C.    The Amended Complaint Establishes This Court's Jurisdiction over Mr. Old

Mr. Farouki's claims against Mr. Old arise directly from Mr. Old's transacting banking business in the District of Columbia – specifically, from his renegotiation and release of the AEGIS Guaranty during the period when he was General Manager of PIBC in the District of

---

[5] Because Petra Bank has transacted business in the District of Columbia and the claims against Petra Bank arise out of a contract "entered into or to be performed, in whole or in part, in the District of Columbia," this Court also has personal jurisdiction over Petra Bank pursuant to § 13-334(b).  *See* footnote 3.

Columbia.  Amend. Compl. ¶¶ 8, 31, 41-43.  The renegotiation and release occurred in the District of Columbia.  Amend. Compl. ¶¶ 37, 43.

These events are central to Mr. Farouki's claims against Mr. Old.  As such, there is clearly a "discernible relationship" between the business transacted by Mr. Old in the District of Columbia and the claims asserted in the Amended Complaint.  Nothing more is required to satisfy the District of Columbia's long-arm statute, D.C. CODE § 13-423(a)(1).  *See Wolf Coach*, 231 F. Supp. 2d at 63 (exercising jurisdiction over Massachusetts company after finding a "discernible relationship" between the sale of a news van to a business in the District of Columbia and an injury to a Maryland resident operating the van in Virginia).  This discernible relationship is sufficient to establish that Mr. Farouki's claims against Mr. Old "arise from" his transacting business in the District and confer personal jurisdiction over Mr. Old pursuant to D.C. CODE § 13-423(a)(1).  *See Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 333 (D.C. 2000) (applying the "discernible relationship" test).[6]

Defendants argue that the only statutory basis for exercising personal jurisdiction over nonresidents for tort claims is D.C. CODE § 13-423(a)(3) and (4) which respectively require either a tortious injury or tortious act in the District of Columbia.[7]  The argument lacks merit.[8]

---

[6] In addition, because the claims against Mr. Old arise out of the AEGIS Guaranty, a contract entered into and to be performed (i.e. repaid) in the District of Columbia, personal jurisdiction over Mr. Old is further conferred by D.C. CODE § 13-334(b).

[7] D.C. CODE § 13-423, Personal Jurisdiction Based on Conduct, states in relevant part:

> (a)  A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –

> (1) transacting any business in the District of Columbia

> * * *

As much has already been demonstrated by this Court in the *Wolf Coach* case, where the plaintiff sued Wolf Coach, a Massachusetts corporation, for six separate tort claims.  Though challenged by the defendant, this Court exercised personal jurisdiction pursuant to D.C. CODE § 13-423(a)(1), the "transacting business" provision of the District's long-arm statute.[9]

In *Wolf Coach*, the Court concluded that the exercise of personal jurisdiction pursuant to the District of Columbia's "transacting business" provision was appropriate because the defendant negotiated a contract with a news organization based in the District of Columbia and, though the alleged torts occurred elsewhere, they arose from that transaction in the District.  *Wolf Coach*, 231 F. Supp. 2d at 62-63; s*ee also Smith v. Jenkins*, 452 A.2d 333 (D.C. 1982) (finding meetings in District of Columbia concerning real estate investment in Maryland conferred jurisdiction under D.C. § 13-423(a)(1) for tort claims arising from the deal).  A similar analysis with respect to the claims against Mr. Old yields a similar result.  Because the claims against Mr.

---

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

* * *

[8] The sole authority relied upon by Defendants, the *Moncrief* case, does not support their position that a tort claim must rest on jurisdiction under § 13-423(a)(3) or (4).  In fact, it supports the opposite conclusion.  *See Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217 (D.C. 1986).  In *Moncrief*, the plaintiff asserted jurisdiction under only D.C. CODE §§ 13-423(a)(3) and (4) and appealed the trial court's dismissal under these provisions.  Consequently, the District of Columbia Court of Appeals never reached the question of whether jurisdiction could have been conferred by § 13-423(a)(1).  *See id.* at n. 4.  Nevertheless, the court's analysis is instructive.  The appeals court opined that an overly expansive interpretation of D.C. CODE § 13-423(a)(3) would render paragraph (a)(1) superfluous.  *Id.* at 221.  The conclusion that can be drawn from this opinion is that paragraph (a)(1), the "transacting business" provision, can confer jurisdiction in a tort case – otherwise no matter how expansively (a)(3), a tort provision, is interpreted, it would never encroach upon let alone render superfluous paragraph (a)(1).

[9] *Wolf Coach*, 231 F. Supp. 2d 60-63.  Even if this court were to consider jurisdiction strictly under § 13-423(a)(3) and (4) – which it should not – the allegations of the complaint still satisfy the long-arm statute.

Old arise from his negotiation and release of the AEGIS Guaranty in the District of Columbia, the District's long-arm statute is satisfied.

As PIBC's General Manager from 1990 through 1993, Mr. Old oversaw PIBC's banking business when its principal place of business was in the District of Columbia.  During that period, Mr. Old availed himself both personally and professionally of the privileges and benefits of the District's laws.[10]  Nothing more is required to establish minimum contacts with the forum. *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (The exercise of those privileges "may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the [defendant] to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."); *see Chase v. Pan-Pacific Broadcasting, Inc.,* 617 F. Supp. 1414, 1422-23 (D.D.C. 1985) (finding corporate officer was subject to personal jurisdiction where, *inter alia,* he twice came to the District of Columbia for discussions and allegedly made dispositive decisions in the District); *Unidex Sys. Corp. v. Butz Eng. Corp.*, 406 F. Supp. 899, 900-01 (D.D.C. 1976) (finding minimum contacts in four meetings in the District of Columbia concerning alleged contract formation.).

**D.    Plaintiff Requests An Opportunity to Conduct Jurisdictional Discovery**

At least two federal courts sitting in the District of Columbia have noted Petra Bank's

---

[10] This is not to concede that Mr. Old's contacts with the District of Columbia ended when PIBC ceased to have its principal place of business here.  Thereafter, PIBC and Mr. Old both continued to act as collection agents for Petra Bank.  Discovery may well disclose that this activity involved substantial contact with the District of Columbia.  Indeed, Mr. Old arguably continues to work in the District of Columbia even today, as he continues to be the "General Manager" of PIBC and a collection agent for Petra Bank, and PIBC as assignee of Petra Bank is now seeking to collect on Mr. Farouki's guarantee in a counterclaim asserted against Mr. Farouki in this Court.

extensive contacts with the forum.[11]  Although the appellate court in *El Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996), agreed with this Court that the plaintiff had not yet alleged enough contacts between Petra Bank and this District to establish general jurisdiction and justify a denial of Petra Bank's motion to dismiss, the appellate court concluded that there should not be a ruling on the motion until the plaintiff had been allowed to conduct discovery on the issue.  *Id.* at 675-76.  The Circuit Court held that "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."  *Id.* at 676.  In the instant action, there is, at most, a factual dispute concerning some of the bases for this Court's jurisdiction over Petra Bank and Mr. Old that the Court should resolve in Plaintiff's favor.  *See Helmer*, 393 F.3d at 209.  If the Court disagrees, however, consistent with the appellate opinion in *El Fadl,* Plaintiff respectfully requests that the Court defer ruling on Defendants' Motion until Plaintiff has had an opportunity to conduct reasonable discovery on the question of jurisdiction.[12]

---

[11] The District of Columbia Circuit in *El Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996) noted the following forum contacts alleged by a former PIBC employee:  (1) Petra Bank's issuance of a commercial loan of over $500,000 in the District in 1989, (2) Petra Bank's prior involvement in litigation in the District, (3) *Petra Bank's entry into several "collateral agreements covering loans in the District of Columbia" using a form contract that selects as the governing law the laws of the District of Columbia*, (4) *Petra Bank's ownership of 70% of PIBC, its District of Columbia subsidiary, with which Petra Bank maintained bank accounts in the District of Columbia;* (5) significant money transfers between Petra Bank and PIBC, and (6) *Mr. Old's acknowledgement that PIBC acted as Petra Bank's "collection agent" in the District of Columbia.*  A second court in this district also found that jurisdiction could result from Petra Bank's contacts with the District of Columbia.  In *Chalabi v. Hashemite Kingdom of Jordan*, 503 F.Supp.2d 267 (D.D.C. 2007), *aff'd* 543 F.3d 725 (D.C. Cir. 2008), this Court took note of the following forum contacts alleged by a former PIBC executive:  (1) Petra Bank maintained a residence within the District of Columbia, which was used by bank employees who made business trips to the District on a daily basis to collect upon the checks deposited in Petra Bank; and (2) the volume of this activity was approximately $12 million daily.  The Court held that Chalabi had alleged facts supporting jurisdiction and thus dispensed with jurisdictional discovery but, nevertheless, dismissed the action as time-barred.

[12] *See GTE New Media Servs., Inc. v. Bell-South Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) (holding that jurisdictional discovery is justified if a plaintiff "demonstrates that it can supplement its jurisdictional allegations through discovery").  Plaintiff has pled a *prima facie* case that Petra Bank has had sufficient contacts with the forum, either directly or by virtue of its principal-agency/alter-ego relationship with PIBC.  To further support this assertion, Plaintiff has requested documents from PIBC and Petra Bank

## II.    The Amended Complaint Clearly Sets Forth Grounds for Finding Venue Proper in this District

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Pain v. United Tech. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Despite the fact that PIBC, with Mr. Old as its General Manager, is seeking to prosecute its Counterclaim against Mr. Farouki in this very Court, Defendant Old argues that venue is improper because certain allegations against him relate, in part, to conduct outside the District of Columbia.  Mr. Old's Motion reflects a basic misunderstanding of the allegations against him. The federal venue statute provides that a civil action in which jurisdiction is not founded solely on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  The tort claims alleged against Mr. Old have two parts:  the first part concerns the facts and circumstances of his involvement in the renegotiation and release of the AEGIS Guaranty; the second part concerns the facts and circumstances of his defamatory and injurious statements.  The false statements made by Mr. Old would not be false were it not for what he said and did in his negotiations with Mr. Farouki between 1990 and 1993, which Mr. Old admits took place in the District of Columbia.

Defendant Old further argues that venue must be proper as to each claim.  First, the Amended Complaint amply alleges that a substantial part of the events giving rise to each claim against Mr. Old occurred in the District of Columbia.  Second, Defendants' articulation of the

---

and testimony from Mr. Old and the declarant, Nafeth A. Al-Fattah.  Each of Plaintiff's requests for discovery has been rejected by Defendants.  Following the parties' Rule 26(f) conference, Plaintiff will continue to seek this discovery.  At a minimum, however, before the Court resolves the jurisdictional questions, Plaintiff should be given an opportunity in discovery to test the bald conclusion of the declarant that Petra Bank "does not influence or direct the officers of PIBC."  Decl. ¶ 5.

law is incomplete.  In support of his position, he has cited *Relf v. Gasch,* 511 F.2d 804 (D.C. Cir. 1975).  In quoting *Relf v. Gasch*, however, he has omitted a significant caveat noted by the D.C. Circuit that applies in this case.  While satisfying venue as to each cause of action may be the general rule, the *Relf* court noted that the rule "may be undesirable where the parties and proofs for all causes of action are identical."  *Relf*, 511 F.2d at; 807; *see also Laffey v. Northwest Airlines, Inc.* 321 F. Supp. 1041 (D.D.C. 1971) (finding venue proper for a cause of action arising out of a common nucleus of operative facts properly before the court).

Venue is proper in this case because each claim against Mr. Old directly relates to his involvement in the renegotiation and release of the AEGIS Guaranty in the District of Columbia between 1990 and 1993.  Despite Mr. Old's protests about potential discovery challenges, he has already acknowledged that he informed Petra Bank that Mr. Farouki's debt is outstanding.  *See* Defendants' Answer at ¶ 41.  Accordingly, the facts and circumstances surrounding the defamatory and injurious statements themselves are unlikely to be a controversy requiring extensive discovery.  The facts and circumstances surrounding the renegotiation and release of the AEGIS Guaranty, which took place in the District, on the other hand, are likely to be the central points of controversy and discovery in this case.

Defendant Old asserts that a claim of defamation arises in the place where the alleged defamatory statement was published.  In support of this argument, Defendant Old has cited three district court opinions issued respectively by the Eastern District of New York, the Western District of Pennsylvania, and the District of Connecticut.  Motion at 16-17.  He has cited no supporting authority in this judicial district.  This is not surprising because the District of Columbia Circuit in *Crane v. New York Zoological Society,* 894 F.2d 454 (D.C. Cir. 1990) noted that it was also unable to find such an authority.

In *Crane*, the District of Columbia Circuit reversed the dismissal of a defamation claim in which the trial court concluded that publication in the District was a prerequisite for a defamation claim.  The Circuit Court responded:  "[w]e can find no support for the court's proposition."  The court in *Crane* noted in its analysis that defamation could occur even when publication occurs outside the forum or when "publication occurs outside the jurisdiction in which the plaintiff lives or works."  *Crane*, 894 F.2d at 457-58.  "[G]iven the rapid flow of information and people in our society across state and national borders, a defamation published in one place might well affect the general estimation in which that plaintiff is held in another place, without a second publication occurring there."  *Id.*

For the reasons discussed throughout this memorandum, the District of Columbia is the jurisdiction with the most significant relationship to the parties and the causes of action alleged in the Amended Complaint.  Furthermore, while Defendants are correct that Mr. Farouki's business reputation has been injured in Jordan, it has also been injured in the District of Columbia and Metropolitan Washington, D.C. where Mr. Farouki lives and works and engages in substantial international business.  *See* Amend Compl. ¶ 7.  As previously noted by this Court, "the Metropolitan Washington, D.C. area functions, in many respects, as a unified legal and commercial community."  *Wolf Coach*, 231 F. Supp. 2d at 63.  Mr. Farouki has been and is currently engaged in substantial federal government contracting in the District of Columbia through his businesses.  *See* Amend. Compl. ¶¶ 7, 18, 23.  Mr. Old's defamatory statements have been published throughout the United States.  Accordingly, the injury to his reputation has occurred in both Jordan and the District of Columbia.

Defendant argues that for the claim of tortious interference with contract, venue is proper only where the tortious acts were committed, citing *United States Surgical Corp. v. Imagyn Med.*

*Tech., Inc.,* 25 F. Supp. 2d 40 (D. Conn. 1998).  The *U.S. Surgical* case cited by the Defendants

is neither factually analogous nor legally instructive to the instant case.  In *U.S. Surgical*,

plaintiff U.S. Surgical brought a breach of contract claim against a former employee and a

tortious interference claim against the former employee's new employer, Imagyn.  Although the

district had personal jurisdiction over Imagyn, the court made clear that none of the facts relating

to the claim against Imagyn occurred in Connecticut.  *Id.* at 43.  As a result, the court transferred

the action.  The court noted, however, that all or even most of the central facts of the cause of

action need not occur in the forum for venue to be proper. *Id.*  A similar conclusion was reached

by this court in *McQueen v. Woodstream Corporation*, 244 F.R.D. 26 (D.D.C. 2007):

> [T]he court must evaluate whether the district the plaintiff chose had a
> substantial connection to the claim, whether or not other forums had
> greater contacts . . . In determining whether the district's connections to
> the claim are sufficiently substantial to support venue under the statute, the
> court assumes that the plaintiffs allegations are true.  *A court should not
> focus only on those matters that are in dispute or that directly led to the
> filing of the action.  Rather, it should review the entire sequence of events
> underlying the claim.*  Specifically, the substantial connections standard
> set forth in Section 1391(a)(2) may be satisfied by a communication
> transmitted to or from the district in which the cause of action was filed,
> given a sufficient relationship between the communication and the cause
> of action.[13]

*Id.* at 30 (emphasis added).

The *McQueen* court concluded that defendant's agent's telephone calls to the plaintiff's

agent in the District of Columbia and letters addressed to defendant's D.C. office from the

plaintiff demonstrated that venue was proper in D.C. District Court even though the alleged

misappropriation of plaintiff's technology occurred in Pennsylvania.  *See Id.* at 30-31.  This

---

[13] Although jurisdiction in *McQueen* fell under 28 U.S.C. § 1391(a)(2) as opposed to § 1391(b)(2) as it
does in this case, the provisions are identical and the court interpreted the identical language at issue in
this case:  whether this is a "judicial district in which a substantial part of the events or omissions giving
rise to the claim occurred…"

forum's connection to the causes of action against Mr. Old is at least as strong as that in

*McQueen*.  The facts and circumstances that informed Mr. Old's defamatory and injurious

statements – those relating to his renegotiation and release of the AEGIS Guaranty – all occurred

in the District of Columbia.  Additionally, the injury from these false statements has been felt in

the District of Columbia where Mr. Farouki routinely transacts business.

     The fact that Mr. Old has ostensibly moved his residence from Metropolitan Washington,

D.C. to Florida should not weigh heavily on this court's consideration of venue when the cause

of action results from his transacting business in the District and his inviting Mr. Farouki to

conduct business with him in the District.  Moreover, Mr. Old remains the General Manager of

PIBC, which, according to Defendants, continues to maintain a registered business address in the

District of Columbia and does not dispute this Court's jurisdiction.  *See* Counterclaim ¶ 1.

## III.  The Amended Complaint Clearly Sets Forth Claims On Which Relief Can Be Granted

     FED. R. CIV. P. 8(a)(2) requires only that a pleading contain "a short and plain statement

of the claim showing that the pleader is entitled to relief."  The exclusive function of pleading is

to give notice of claims or defenses.  *Muir v. Navy Federal Credit Union*, 529 F.3d 1100,

1108 (D.C. Cir. 2008); *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007).  As this Court stated in

*Wolf Coach*:

> "[t]he Court cannot grant a motion to dismiss pursuant to Federal Rule of
> Civil Procedure 12(b)(6) unless it appears beyond doubt that the plaintiff
> can prove no set of facts in support of his claim which would entitle him
> to relief.  Thus in evaluating the defendant's motion, the Court will
> assume all the factual allegations set forth in the complaint, and will
> construe the complaint liberally in favor of the plaintiff."

231 F. Supp. 2d at 60; s*ee also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The Court should

accept all inferences drawn by Plaintiff provided those inferences are supported by the facts set

forth in the Amended Complaint.  *See id.*  "The law in this Circuit adamantly upholds a

plaintiff's right to present the factual basis of his claims to the Court, and eschews threshold dismissal of complaints." *Katradis v. Dav-El of Washington, D.C.*, 702 F. Supp. 1, 2 (D.D.C. 1987).

### A.     Defamation Is Adequately Pled

Defendants argue that Plaintiff's defamation claim must be dismissed because it is not pled with particularity.  In support of their position, Defendants have cited several older cases from this judicial district.  *See* Motion at 7-8.  These cases do not reflect the current state of the law in this Circuit or the local courts of the District of Columbia.  The District of Columbia Circuit has expressly rejected heightened pleading standards for defamation actions, concluding that it is only necessary for a plaintiff to "allege the elements of the cause of action."  *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 n. 2 (D.C. Cir. 1999).  "[T]he Federal Rules of Civil Procedure impose no special pleading requirements for defamation as they do for a specified list of other matters."  *Id.*; *see also Messina v. Fontana*, 260 F. Supp. 2d 173, 177 (D.D.C. 2003), *aff'd,* 439 F.3d 755 (D.C. Cir. 2006) ("[H]eightened pleading standards do not apply in defamation actions.").

Similarly, the District of Columbia Court of Appeals has rejected particularized pleading in favor of a notice pleading standard in defamation actions.  *E.g., Clampitt v. American Univ.*, 957 A.2d 23, 43 (D.C. 2008) ("We have not adopted a heightened pleading rule for defamation cases."); *Oparaugo v. Watts*, 884 A.2d 63, 76-77 (D.C. 2005).

The elements of defamation are (1) a false and defamatory statement concerning the plaintiff; (2) publication by defendant without privilege; (3) defendant's fault in publication amounting to at least negligence; and (4) its publication causing plaintiff special harm or the statement is otherwise actionable as a matter of law.  *Blodgett v. University Club*, 930 A.2d 210, 222 (D.C. 2007).  These elements have been sufficiently pled.

Mr. Old is the alleged speaker.  Amend. Compl. ¶ 86.  One or more journalists associated

with Arom Roston and T. Christian Miller, Nafeth Abdul Al-Fattah, Petra Bank, members of the

Central Bank, and other prominent members of the Jordanian banking and business community

are among the alleged listeners.  Amend. Compl. ¶¶ 48, 51, 86.  The defamatory statements were

published in Jordan and throughout the United States.  Amend. Compl. ¶¶ 48, 51, 86.  The

content of the defamatory statements is alleged:  "that Mr. Farouki is fifteen years delinquent in

repaying a multi-million dollar debt resulting from the AEGIS Guaranty."  *Id.*  The time of the

defamatory statements can also be inferred to be in or around 2008.  *Id.* (Petra Bank seized Mr.

Farouki's property in June 2008 based on information provided by Mr. Old); *see also*

Counterclaim ¶¶ 30, 31 (a prominent Jordanian businessman sought information about Mr.

Farouki in 2008, causing Petra Bank to investigate his liability and lien his property).  These

allegations are sufficient to notify Defendants of the claims against them and to permit them an

opportunity to respond.  Nothing more is required.  *Muir*, 529 F.3d at 1108; *Erickson,* 127 S.Ct.

at 2200.

Defendants' assertion that Plaintiff  has failed to allege special damages is puzzling given

that the first paragraph of Plaintiff's Amended Complaint alleges that certain of Mr. Farouki's

property has been seized as a result of Mr. Old's defamatory statements in this case.[14]  The

seizure of Mr. Farouki's property is a quantifiable pecuniary loss.  Accordingly, special damages

---

[14] *See also* Amend. Compl. ¶¶ 81, 87.  The element of "special harm" or "special damages" in a cause of
action for defamation simply refers to "harm of a material or pecuniary nature."  *Doe v. Chao*, 540 U.S.
614, 625 (2004), citing 3 RESTATEMENT (SECOND) OF TORTS § 575, cmt. a and b; *see also Houlihan v.
World Wide Assoc. of Specialty Programs and Schools,* 2006 WL 2844190 at *8 (D.D.C. 2006) ("special
damages . . . are awarded for losses of an economic or pecuniary nature.").  "Plaintiffs claiming
[defamation] could recover presumed damages only if they could demonstrate some actual, quantifiable
pecuniary loss."  *Chao,* 540 U.S. at 625.

have been pled.[15]  Mr. Farouki has alleged additional harm to his reputation, credibility, and business interests.  Amend. Compl. ¶¶ 72, 83, 86, 87.

Collectively, Defendants make the same argument in response to Plaintiff's defamation claim that Mr. Old made with respect to venue.  Defendants argue that actionable defamation requires publication in the District.  It does not.  *See Crane*, 894 F.2d at 457-58; *see also* Section II above discussing proper venue for defamation claims.  In any event, the Amended Complaint alleges publication throughout the United States.  Amend. Compl. ¶ 48.

Moreover, despite Defendants' argument to the contrary, the defamatory statements alleged in this case ascribe a lack of honesty to Mr. Farouki that is actionable irrespective of special harm.  Amend. Compl. ¶¶ 48, 51, 86.  "One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession . . . is subject to liability without proof of special harm."  *Wallace v. Skadden Arps Slate Meagher & Flom*, 715 A.2d 873, 877-78 (D.C. 1998) citing RESTATEMENT (SECOND) OF TORTS, Section 573 (1977).

The defamatory statements alleged, "that Mr. Farouki is fifteen years delinquent in repaying a multi-million dollar debt resulting from the AEGIS Guaranty," directly relates to Mr. Farouki's honesty, integrity, and his credit-worthiness.  Mr. Farouki is an entrepreneur and independent business owner.  Amend. Compl. ¶ 7.  As such, his commercial success depends upon his reputation in the business and banking communities.  Any false statements – such as those alleged in this case – that impugn his honesty or credit-worthiness in the District of Columbia or international business and banking communities must be considered odious and

---

[15] The case cited by Defendants, *Slovinec v. American University*, 565 F. Supp. 2d 114 (D.D.C. 2008), is inapposite.  The plaintiff's defamation claim in *Slovinec* was defeated on summary judgment when, even after discovery, there was "nothing in the record to . . . establish any monetary losses suffered."  *Id.* at 120.

defamatory and actionable by law.  *See LaPrade v. Abromson*, No. 97-0010, 2006 WL 3469532 at *12 (D.D.C. Nov. 29, 2006) (finding colorable a cause of action for defamation based on business' alleged false report concerning a customer's debt); *Holt v. Boyle Brothers*, 217 F.2d 16 (D.C. 1954) (finding a letter to employer accusing employee of refusing to pay a just debt was defamatory).

### B.     Injurious Falsehood Is Adequately Pled

Again, with respect to injurious falsehood, Defendants argue that Plaintiff has failed to plead damages.  Defendants mischaracterize the Amended Complaint.  The Amended Complaint alleges that certain of Mr. Farouki's property has been seized as a result of Defendants' misconduct in this case.  Amend. Compl. ¶¶ 1, 81, 83.  The Amended Complaint also alleges that this property was seized based on knowingly false information provided by Mr. Old, who alleged that the AEGIS Guaranty remained outstanding.  Amend. Compl. ¶¶ 51, 80.  The Amended Complaint also alleges an injury to Mr. Farouki's reputation and business interests as a result of Mr. Old's injurious falsehood.  Amend. Compl. ¶¶ 72, 83, 86, 87.

Defendants further suggest that injurious falsehoods must relate to Plaintiff's "property, products, or services" to be actionable.  As noted in *Whetstone Candy Co. v. Nat'l Consumers League,* 360 F. Supp. 2d 182 (D.D.C. 2005), the principle of injurious falsehood is often applied in cases concerning the disparagement of property in land, chattels or intangible things or of their quality. The rule is not, however, limited to them.  It is equally applicable to other publications of false statements that do harm to interests of another having pecuniary value and so result in pecuniary loss.  *See* RESTATEMENT (SECOND) OF TORTS § 623A.  The Restatement offers the following illustration:

> A, an employer, knowing his statement to be false, reports to income tax authorities that he has paid B, his employee, a salary of $10,000 for the year.  As a result B, who has in fact received a salary of $5,000 and has so

> reported, is prosecuted by the United States government for tax evasion and suffers pecuniary loss in the defense of the suit. A is subject to liability to B.

*Id.* cmt. a.

The illustration is analogous to the facts of this case. In the illustration, A has falsely alleged that B has an outstanding tax liability to the United States Government. Similarly, the Amended Complaint alleges that Mr. Old has knowingly and falsely alleged that Mr. Farouki has an outstanding loan liability to Petra Bank. This is sufficient to plead injurious falsehood. *See Neshewat v. Salem*, 173 F.3d 357, 363 (6th Cir. 1999) ("Injurious falsehood . . . may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general, *or even to some element of his personal affairs, of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage*.") (quoting PROSSER & KEETON ON TORTS (5th ed.), Injurious Falsehood, Section 128 at 967) (emphasis added).

### C. Laches Is Adequately Pled

Defendants assert that because laches is an equitable defense it is somehow unavailable in this declaratory and injunctive action. While laches is typically applied in claims in equity, it can also be applied to bar an award of damages. *NAACP v. NAACP Legal Defense and Education* Fund, 753 F.2d 131, 138 n.65 (D.C. Cir. 1985). Given the fifteen year silence by Defendants, this would be an appropriate case to do so. More importantly, Defendant's assertion speaks to the relief sought by Plaintiff rather than the viability of the cause of action. Even if this Court agrees with Defendant that laches is a defense only to a claim in equity, the declaratory and injunctive relief sought by this claim can be tailored to prevent all future equitable actions for recovery with respect to the AEGIS Guaranty. The cause of action remains viable and should not be dismissed. *See Beaty v. Sellinger*, 306 F.3d 914 (9th Cir. 2002) ("it is nearly always the

case that a defendant who invokes laches could have brought an earlier declaratory action against the late-litigating plaintiff.").

### D.     Promissory Estoppel Is Adequately Pled

Defendants argue that Plaintiff's promissory estoppel claim is an impermissible restatement of Mr. Farouki's claim for breach of contract.  Defendants are wrong as a matter of law.  Plaintiff has not brought a claim for breach of contract and the two claims for declaratory judgment ask this Court to determine the rights and responsibilities of the parties vis-à-vis the AEGIS Guaranty rather than apportion liability for breach of contract.

The *Kaufman* case relied upon by Defendants turned on the plaintiff's merely restating his breach of contract claim as promissory estoppel.  The plaintiff cited no promise on which he relied to his detriment.  *See Kauffman v. Int'l Brotherhood of Teamsters*, 950 A.2d 44 (2008).

In the instant case, on the other hand, Mr. Farouki's promissory estoppel claim seeks redress for the injustice resulting from his release of PIBC with respect to the bank's failure to meet its lending obligations under the agreed upon credit facility.  Amend. Compl. ¶ 76.  As a result of this justifiable reliance, Defendants should be estopped from asserting that Mr. Farouki's debt remains outstanding.

Despite Defendants' assertions to the contrary, Mr. Farouki's release of claims against PIBC was not illusory.  Mr. Farouki was more than a shareholder of AEGIS.  He was the controlling shareholder and President (chief executive) of the company.  *See* Amend. Compl. ¶ 1. As such, his personal standing to initiate suit is irrelevant.  He had authority to initiate legal proceedings on behalf of AEGIS and, conversely, he had authority to abstain from initiating legal proceedings.  *See* Federal Rules of Bankruptcy Procedure, Rule 6009, "with or without court approval, the . . . debtor in possession may . . . commence and prosecute any action or proceeding in [sic] behalf of the estate before any tribunal."  A successful lender liability action

against PIBC would have reduced AEGIS' and Mr. Farouki's outstanding obligation to PIBC. As chief executive and controlling shareholder of AEGIS, Mr. Farouki's release of PIBC's lender liability was anything but illusory.

### E.   Tortious Interference with Contract Is Adequately Pled

Defendant argues that a corporate officer cannot, as a matter of law, be held liable for tortious interference with a contract entered by the corporation.  Motion at 6.  Defendants are incorrect.  In *Nickens v. Labor Agency of Metropolitan Washington*, 600 A.2d 813 (D.C. 1991), the District of Columbia Court of Appeals held that a corporate officer's interference with a contract is not entitled to any protection if he acts against the corporation's interest, for his own pecuniary benefit, or with the intent to harm the plaintiff."  *Nickens v. Labor Agency of Metropolitan Washington*,  600 A.2d 813, 820 (D.C. 1991); *see also Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989) (holding that the employee of a party to a contract could be liable for tortious interference with contract).  "In that case, the officer should be viewed as acting in his individual capacity and interest rather than on behalf of the corporation."  *Nickens*, 600 A.2d at 820.

The Amended Complaint expressly alleges that Mr. Old has interfered with the agreement between PIBC and Mr. Farouki for his own benefit.  His lying to Petra Bank about Mr. Farouki's remaining obligations under the AEGIS Guaranty did not benefit his employer PIBC.  The only benefit was received by Mr. Old, who stands to collect a sizeable commission for any successful collection on behalf of Petra Bank.  *See* Amend. Compl. ¶¶ 10, 82.

Other jurisdictions have similarly held that the position of a corporate officer does not immunize the officer from liability in claims for tortious interference with contract.  *E.g., Cashen v. Integrated Portfolio Management*, No. 08-0268, 2008 U.S. Dist. LEXIS 95145 (D. Ill. Nov. 20, 2008); *Trimble v. City and County of Denver,* 697 P.2d 716, 726 (Colo. 1985)*; Cronk v.*

*Intermountain Rural Elec. Ass'n,* 765 P.2d 619, 623 (Colo. App. 1988) (where officer was motivated solely by desire to induce breach with plaintiff, interference was improper and actionable); *Hickman v. Winston County Hosp. Bd.,* 508 So.2d 237, 239 (Ala. 1987) (corporate officer may be liable for intentional interference with corporation's contractual relations if acting outside the scope of employment or with actual malice); *Tye v. Finkelstein,* 160 F. Supp. 666, 667 (D.Mass. 1958) (same).  "No useful purpose is served by allowing the corporate veil to protect an officer who uses his power to breach a contract solely to serve his own ends." *Nickens*, 600 A.2d at 820.

## CONCLUSION

Because the claims brought in this action relate fundamentally to a contract negotiated in the District of Columbia, executed in the District of Columbia, and expressly governed by the laws of the District of Columbia, and because the Defendants have all interjected themselves into the District of Columbia's commerce with respect to the claims brought in this action, the Court should deny Petra Bank's and Randolph Old's Motion to Dismiss for lack of jurisdiction and improper venue.  Because the Amended Complaint in all respects meets the notice pleading requirements of FED. R. CIV. P. 8(a), Defendants' Motion to Dismiss for failure to state a claim must also be denied.

Dated: March 13, 2009                             Respectfully submitted,

                                           */s/  Robert J. Mathias*

                                           Robert J. Mathias (#436092)
                                           David Clarke, Jr. (#396002)
                                           Grayson D. Stratton (#976910)
                                         DLA PIPER LLP (US)
                                         500 8th Street, N.W.
                                         Washington, D.C. 20004
                                         Phone: (202) 799-4000
                                         Fax: (202) 799-5000

                                         Attorneys for Plaintiff
                                         A. Huda Farouki