## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
)
**A. HUDA FAROUKI,**                             )
     **Plaintiff,**                              )
                                                 )
          **v.**                                 )          **Civil Action No. 08-2137 (RCL)**
                                                 )
**PETRA INTERNATIONAL**                          )
**BANKING CORPORATION,** *et al.,*               )
     **Defendants.**                             )
                                                 )
_____)

## MEMORANDUM OPINION

Plaintiff, A. Huda Farouki, brings this action against defendants Petra International

Banking Corporation, Petra Bank, and Randolph B. Old.  Defendant Petra International Banking

Corporation has counterclaimed against plaintiff.  Before the Court are defendants' Motion [66]

to Dismiss Amended Complaint and plaintiff's Motion [69] to Dismiss Amended Counterclaim.

Upon consideration of defendants' Motion, the opposition [68] thereto, the reply [70], applicable

law, and the entire record in this case, the Court will grant in part and deny in part defendants'

motion for the reasons set forth below.  Upon consideration of plaintiff's Motion, the opposition

[71] thereto, the reply [72], applicable law, and the entire record in this case, the Court will grant

plaintiff's motion for the reasons set forth below.  The Court will also enter, *sua sponte*,

summary judgment for plaintiff on Count I of the Amended Complaint.

## I.    BACKGROUND

### A.  FACTUAL BACKGROUND

Plaintiff, A. Huda Farouki ("Mr. Farouki"), is a United States citizen of Jordanian

descent who has resided in Virginia since 1971.  Am. Compl. ¶ 7.  In 1973, Mr. Farouki formed

a company called American Export Group International Services, Inc. ("AEGIS") to engage in the business of exporting construction materials, housing materials and systems, and medical equipment and supplies to government and private sector clients throughout the world.  *Id.* ¶ 18. AEGIS was a Delaware company controlled by Mr. Farouki, its president, from 1973 to 1993. *Id.* ¶ 11.

On November 12, 1986, AEGIS entered a secured credit facility agreement with defendant Petra International Banking Corporation ("PIBC") for $3.7 million in financing in connection with ongoing construction projects in Saudi Arabia.  *Id.* ¶ 19.  PIBC was chartered in the District of Columbia in 1983 pursuant to the Edge Act, 12 U.S.C. § 611, to engage in international and foreign banking operations.  *Id.* ¶ 8.  Defendant Petra Bank, a Jordanian bank located in Amman, Jordan that began operations in 1977, is the parent company of PIBC and owned approximately 70% of PIBC's stock.  *Id.* ¶¶ 8–9.  In connection with this secured credit facility agreement, on November 12, 1986 AEGIS executed a promissory note ("AEGIS Loan") and Mr. Farouki signed a personal guaranty ("AEGIS Guaranty" or "Guaranty") for the repayment of the AEGIS Loan.  *Id.* ¶ 19.  The Guaranty was also signed by a second guarantor, Ali T. Farouki.  *Id.* ¶ 19.  On November 23, 1986, Mr. Farouki entered into a deed of trust that provided his personal residence as collateral for the AEGIS Loan and Guaranty.  *Id.* ¶ 23. Additional collateral supporting the AEGIS Loan included claims that AEGIS had against various governmental and business clients for unpaid work performed under contract.  *Id.* ¶ 24.

The AEGIS Loan was issued in the District of Columbia and payments were made on it in the District of Columbia.  *Id.* ¶ 21.  To satisfy U.S. regulatory requirements, Petra Bank collateralized every dollar that PIBC loaned to AEGIS with a cash deposit in a PIBC account in the District of Columbia—for every $1 million guaranteed by Mr. Farouki, Petra Bank provided

security to PIBC in the form of a $1 million deposit with PIBC. *Id.* ¶ 20.  The AEGIS Guaranty stated that its "performance and construction" was to be "governed by the internal laws of the District of Columbia." *Id.* ¶ 21; Defs.' Mot. to Dismiss Ex. 5, at 5.  The AEGIS Loan agreement stated that the representations made by any party would "be deemed to include the successors and assigns of such party." Am. Compl. ¶ 21.

On April 30, 1987, AEGIS filed a voluntary petition for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia. *Id.* ¶ 25.  Under the terms of the Guaranty, the AEGIS bankruptcy filing constituted an event of default giving PIBC the right to sue Mr. Farouki for the funds outstanding under the AEGIS Loan. *Id.* ¶ 25.  According to the terms of the Guaranty:

> At the option of the Lender and with or without demand or notice, all or any part of the indebtedness and all or any part of Guarantors' obligations hereunder shall become due and payable immediately, irrespective of any agreed maturity, upon the happening of one or more of the following events: . . . (5) the insolvency or appointment of a receiver of the business or property of Borrower . . . or filing of any petition in bankruptcy for relief under the Bankruptcy Code . . . .

Defs.' Mot. to Dismiss Ex. 5, at 3.  On July 28, 1989, AEGIS filed a plan of reorganization with the bankruptcy court that was dependent upon continued financing from PIBC, AEGIS's principal lender.  Am. Compl. ¶ 26.  Although Mr. Farouki did not re-execute the AEGIS Guaranty to cover additional post-petition financing beyond the previously agreed upon credit limits, PIBC provided post-petition financing to AEGIS on a non-guaranteed basis on numerous occasions. *Id.* ¶ 27.

In August 1989, the Central Bank of Jordan ("Central Bank"), pursuant to martial law, assumed control of Petra Bank in Jordan and PIBC in Washington, D.C. *Id.* ¶ 28.  The Central Bank replaced many of Petra Bank and PIBC's officers and directors and established new management committees. *Id.* ¶ 28.  PIBC implemented a practice of having the General

Manager of Petra Bank serve as a permanent member of its Board of Directors and at least one official from the Central Bank as another, usually as PIBC's Chairman. *Id.* ¶ 28. Bassam Anabtawi, a Jordanian, became the interim General Manager of the newly reconstituted PIBC. *Id.* ¶ 28.

Banking operations continued at both Petra Bank and PIBC after the Central Bank takeover, with PIBC continuing to loan new funds to AEGIS under the existing credit facility. *Id.* ¶ 29. During the life of the AEGIS Loan, PIBC issued additional letters of credit to AEGIS, which were guaranteed by Petra Bank through a signed guaranty delivered to PIBC in the District of Columbia. *Id.* ¶ 30. This included an additional $550,000 loaned by PIBC to AEGIS under the existing credit facility with funds PIBC received from Petra Bank. *Id.* ¶ 36. Petra Bank also purchased "risk participations" in these letters of credit by exchanging telexes with PIBC in the District of Columbia. *Id.* ¶ 31.

Between September 1989 and January 1990, Mr. Anabtawi made a series of trips from Jordan to Washington, D.C. on behalf of Petra Bank. *Id.* ¶ 32. During this period, Mr. Farouki met with Mr. Anabtawi several times at PIBC's offices in the District of Columbia to discuss AEGIS's ongoing business and obligations under the AEGIS Loan, as well as Petra Bank's expectation that it would be repaid for the loans it had made and was continuing to make to AEGIS by funding the PIBC credit facility. *Id.* ¶ 32.

In January 1990, defendant Randolph B. Old ("Mr. Old") was appointed to succeed Mr. Anabtawi as General Manager of PIBC and began to manage PIBC from the bank's offices in the District of Columbia. *Id.* ¶ 10. Between 1990 and 1993, Mr. Farouki met with Mr. Old, Dr. Mohammed Saeed El-Nabulsi (the Governor of the Central Bank and official liquidator of Petra Bank), and Dr. Michel Marto (the Deputy Governor of the Central Bank and a member of the

Petra Bank liquidation committee) to discuss repayment of the loans made by PIBC and Petra Bank under the AEGIS credit facility. *Id.* ¶¶ 37–40. Dr. El-Nabulsi and Dr. Marto both represented Petra Bank's interest in the repayment of the AEGIS Loan and sought assurances that AEGIS would repay the AEGIS Loan to PIBC so that the money could in turn be repaid to Petra Bank. *Id.* ¶¶ 38–40.

During this time period, Mr. Farouki also participated in a series of negotiations with PIBC personnel, including Mr. Old, at PIBC's offices in the District of Columbia concerning the release of the AEGIS Guaranty. *Id.* ¶ 41. Mr. Farouki and PIBC ultimately came to an agreement that Mr. Farouki would be released from the AEGIS Guaranty after he satisfied certain conditions, including: (1) Mr. Farouki's continued employment with AEGIS; (2) Mr. Farouki's continued efforts to rehabilitate AEGIS, including filing a plan of reorganization with the bankruptcy court that met PIBC's approval; and (3) Mr. Farouki's assistance in the collection of AEGIS receivables for the benefit of PIBC. *Id.* ¶ 44. In exchange for Mr. Farouki's efforts to collect AEGIS receivables, PIBC agreed to pay Mr. Farouki between 40–50% of all collections. *Id.* ¶ 44.

Mr. Farouki alleges that between 1990 and 1993 he satisfied PIBC's terms for the release of the AEGIS Guaranty, and that the original $3.7 million extended under the AEGIS Loan and guaranteed by Mr. Farouki was repaid in full. *Id.* ¶¶ 44–45. Mr. Farouki also alleges that PIBC and Mr. Old, as General Manager of PIBC, released Mr. Farouki from the AEGIS Guaranty based on Mr. Farouki's ongoing assistance in the collection of AEGIS's receivables and Mr. Farouki's agreeing to release all of his and AEGIS's claims against PIBC relating to its failure to provide additional funding during the AEGIS reorganization. *Id.* ¶ 48. According to Mr.

Farouki, the release of the Guaranty was contained in a written document executed by Mr. Old, but Mr. Farouki is unable to locate this document. *Id.* ¶ 48.

On May 10, 1993, PIBC assigned its alleged rights under the AEGIS Guaranty to Petra Bank in consideration for the financial support provided to PIBC in 1989 and thereafter. *Id.* ¶ 51; Pl.'s Opp'n Ex. 4. Later that year, on July 23, 1993, AEGIS's bankruptcy was converted from a Chapter 11 reorganization to a Chapter 7 liquidation. Am. Compl. ¶ 47.

Although Mr. Old and PIBC allegedly knew Mr. Farouki's home address in Northern Virginia, during the period from 1993 to 2007, defendants did not issue to Mr. Farouki any demand letters, statements of account, notifications of indebtedness, or other indicia of an alleged debt in connection with the AEGIS Guaranty or otherwise. *Id.* ¶ 52. However, in 2003 and 2004, Mr. Old told Petra Bank and others, including Sabih Masri, a Jordanian businessman with whom Mr. Farouki was participating in certain business ventures, that Mr. Farouki owed millions of dollars to Petra Bank under the AEGIS Guaranty. *Id.* ¶ 54. Later, in 2008 Petra Bank caused a lien to be placed on the assets of a company controlled by Mr. Farouki called Aqaba Investment and Trading Co. in Jordan, causing the company to cease all operations. *Id.* ¶ 62. Petra Bank also caused a lien to be placed on real property owned by Mr. Farouki in Jordan. *Id.* ¶ 62. Additionally, in June 2008, upon request from Petra Bank, the Jordanian Department of Customs Services seized certain property belonging to Mr. Farouki as it was being shipped into Jordan. *Id.* ¶ 57.

Agents of Mr. Farouki, in an attempt to retrieve his property in Jordan and to ascertain the purpose of its seizure and liens, met with the General Manager of Petra Bank, Mr. Nafeth Abdul Al-Fattah, in July 2008. *Id.* ¶ 58. Mr. Al-Fattah asserted that the AEGIS Guaranty was validly assigned by PIBC to Petra Bank in 1993 and that Petra Bank was attempting to collect on

the AEGIS Guaranty based on information provided by Mr. Old that the AEGIS Guaranty remained outstanding.  *Id.* ¶ 58.  During this meeting, Mr. Al-Fattah produced an "Indebtedness Notification," dated March 28, 2007, demanding payment from Mr. Farouki on the AEGIS Guaranty.  *Id.* ¶ 59.  The document was addressed to Mr. Farouki at an office building in Reston, Virginia, that was vacated by AEGIS at the time of its liquidation in 1993.  *Id.* ¶ 59.  Mr. Farouki allegedly had no knowledge of the document's existence until it was produced by Petra Bank at this point in July 2008, and allegedly did not receive the document in the mail at his current business address in the Washington, D.C. metropolitan area until October 2008.  *Id.* ¶ 59.

On October 28, 2008, Petra Bank assigned its interest in the AEGIS Guaranty back to PIBC "for purposes of collecting the obligations evidenced by such contracts and related documents."  *Id.* ¶ 63; Pl.'s Opp'n Ex. 5.  Under the agreement, which was signed by Mr. Al-Fattah on behalf of Petra Bank and Mr. Old on behalf of PIBC, any recovery on the Guaranty would be shared between the two banks—90% to Petra Bank and 10% to PIBC.  Pl.'s Opp'n Ex. 5.  The agreement further stated that the assignment "is made in Washington, D.C., and the law of the District of Columbia, exclusive of its conflicts of laws, shall govern any dispute arising in connection with this assignment.  Pl.'s Opp'n Ex. 5.

### B.  PROCEDURAL HISTORY

On December 9, 2008, Mr. Farouki filed the instant action in the face of Petra Bank's claim that Mr. Farouki owes it more than $30 million under the AEGIS Guaranty, which includes decades of allegedly accrued interest.  ECF No. 1.  On February 17, 2009, PIBC, Petra Bank, and Mr. Old filed a motion to dismiss, ECF No. 9, and PIBC filed an answer and a counterclaim.  ECF No. 8.  After jurisdictional discovery pursuant to an Order by Magistrate Judge Robinson, Mr. Farouki filed his Amended Complaint on August 13, 2010.  ECF No. 62.

In Count I of his Amended Complaint, Mr. Farouki seeks a declaratory judgment that the AEGIS Guaranty was released by defendants.  In Count II, Mr. Farouki seeks a declaratory judgment that defendants are barred from initiating any legal action to enforce or collect on the AEGIS Guaranty as a result of the running of the applicable statute of limitations.  In Count III, Mr. Farouki seeks a declaratory judgment that defendants are barred from initiating any action to enforce or collect on the AEGIS Guaranty under the doctrine of laches.  In Count IV, Mr. Farouki seeks a declaratory judgment that defendants are barred from initiating any action to enforce or collect on the AEGIS Guaranty under the theory of promissory estoppel.  Mr. Farouki also seeks to enjoin defendants from initiating any future efforts to collect on the AEGIS Guaranty under the same theories.  Mr. Farouki further alleges that in stating that Mr. Farouki remains liable under the AEGIS Guaranty, Mr. Old committed the torts of injurious falsehood (Count V), defamation (Count VI), and tortious interference with contract (Count VII), causing damages to Mr. Farouki.

Defendant Petra Bank has moved to dismiss plaintiff's complaint in its entirety for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendant Mr. Old has moved to dismiss the claims of defamation, injurious falsehood, and tortious interference with contract for lack of personal jurisdiction pursuant to Rule 12(b)(2), lack of venue pursuant to Rule 12(b)(3), and failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).  All defendants have also moved to dismiss the requests for declaratory relief on the theories of release, statute of limitations, laches, and promissory estoppel for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

In its Answer [65], defendant PIBC brought a counterclaim against Mr. Farouki, requesting a judgment against Mr. Farouki for actual damages in excess of $30 million,

attorney's fees and costs of collection, and prejudgment interest. Countercl. of Def. PIBC ¶ 36. Plaintiff has moved to dismiss PIBC's counterclaim for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Specifically, plaintiff asserts that the applicable statute of limitations has run, time-barring PIBC from bringing its counterclaim.

## II.   ANALYSIS

### A.  PERSONAL JURISDICTION

Defendants Petra Bank and Mr. Old have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

#### *1. Legal Standard*

When personal jurisdiction is challenged by the defendant, the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over each individual defendant. *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). In establishing that personal jurisdiction exists, the plaintiff must allege specific facts that connect the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). The plaintiff may not aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant. *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980) ("the requirements of *International Shoe* must be met as to each defendant over whom a . . . court exercises jurisdiction").

Ordinarily, a plaintiff need only establish a prima facie case that personal jurisdiction exists in order to survive a motion to dismiss. *See Crane*, 894 F.2d at 458. However, where the plaintiff has been granted jurisdictional discovery, as in this case, the plaintiff bears the burden of establishing that personal jurisdiction exists by a preponderance of the evidence. *Shapiro,*

*Lifschitz & Schram, P.C. v. Hazard*, 90 F. Supp. 2d 15, 20 (D.D.C. 2000).   In determining whether personal jurisdiction exists, the Court is not required to treat all of the plaintiff's allegations as true, but instead "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts."   *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

There are two variants of personal jurisdiction: "(1) general, 'all purpose' adjudicatory authority to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity, and (2) specific jurisdiction to entertain controversies based on acts of a defendant that touch and concern the forum."   *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C. 2006) (citing *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)).   General personal jurisdiction requires that the defendant's contacts with the forum be "continuous and systematic" in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the forum.   *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).   Alternatively, the District of Columbia may exercise specific personal jurisdiction over a non-resident defendant only when service of process is authorized by the District's long-arm statute, D.C. Code § 13-423, and only when the exercise of jurisdiction comports with the federal requirement of constitutional due process.   *See COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 519 (D.D.C. 1995) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

### 2.   *Defendant Petra Bank's Motion to Dismiss for Lack of Personal Jurisdiction*

Mr. Farouki does not allege the existence of general personal jurisdiction over defendant Petra Bank.   Pl.'s Opp. to Defs.' Mot. to Dismiss 7 n.2.   Instead, Mr. Farouki asserts that the Court has personal jurisdiction over Petra Bank under D.C. Code § 13-423(a)(1), which provides

that a "District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia."  D.C. Code § 13-423(a)(1) (2001).  This section of the long-arm statute "is given an expansive interpretation that is coextensive with the due process clause." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (citing *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981)).  Thus, the sole inquiry for the Court is whether Petra Bank, a non-resident defendant, had sufficient minimum contacts with the District of Columbia to satisfy due process.

The Due Process Clause requires only that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  A single act of a corporate agent in a state may be deemed a sufficient contact "to render the corporation liable to suit," depending on the nature and quality of the act.  *Int'l Shoe*, 326 U.S. at 318.  The act should be "neither irregular nor casual," but must demonstrate that the defendant purposefully availed himself of "the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights."  *Id.* at 319–20.  The act or activities must also give rise to the obligation sued on.  *Id.* at 320; D.C. Code § 13-423(b) (2001).  "Clearly, the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum." *Mouzavires*, 434 A.2d at 995.

Mr. Farouki asserts that Petra Bank has sufficient minimum contacts with the District of Columbia because it took assignment of the AEGIS Guaranty from PIBC in the District of

Columbia and also because it executed an assignment, collection, and sharing agreement with PIBC in the District of Columbia regarding the AEGIS Guaranty. "Taking assignment of a contract that forms the basis of the controversy *sub judice* is sufficient to satisfy both the D.C. long-arm statute and due process requirements, where such a contract was made in the District, to be performed in the District, and governed by District law." *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 31 (D.D.C. 2006). "Taking assignment of a contract demonstrates, in the purest sense, that the assignee has purposefully availed himself of the benefits of the enforcing State's law, and accepted its burdens. . . . The assignee relies on the State's law to enforce the agreement, and concomitantly binds himself to discharge the liabilities the contract and law assign to him." *Id.* at 32.

In *Johnson*, the defendant trust company's only contacts with the District of Columbia involved taking assignment of a mortgage note secured by real property located in the District of Columbia. *Id.* at 31. The notes and the rights to the property were at issue in the case. The District Court found that the assignment of the mortgage note was a sufficient contact with the forum for it to exercise personal jurisdiction over the defendant under the District of Columbia's long-arm statute, consistent with due process requirements, because taking assignment "requires an affirmative, purposeful act on the part of a sophisticated corporation capable of assessing potential liability arising from the acquisition." *Id.*

Mr. Farouki asserts that Petra Bank, a Jordanian bank with no offices in the District of Columbia, purposefully availed itself of the benefits and protections of the laws of the District of Columbia when it took assignment in 1993 of the AEGIS Guaranty, a contract negotiated in the District of Columbia, executed in the District of Columbia, performed in the District of Columbia, and subject to the laws of the District of Columbia. Am. Compl. ¶ 51; Pl.'s Opp. to

Defs.' Mot. to Dismiss Ex. 4.  Mr. Farouki also asserts that Petra Bank purposefully availed itself of the laws of the District of Columbia when it executed an assignment, collection, and sharing agreement with PIBC in the District of Columbia in 2008, pursuant to which the Guaranty was reassigned from Petra Bank to PIBC for purposes of collection.  Am. Compl. ¶ 63; Pl.'s Opp. to Defs.' Mot. to Dismiss Ex. 5.  This agreement was executed in the District of Columbia by Petra Bank's General Manager, is governed by the laws of the District of Columbia, and provides that Petra Bank will receive 90% of any recovery obtained by PIBC.  Pl.'s Opp. to Defs.' Mot. to Dismiss Ex. 5.

Petra Bank argues that assignment of the Guaranty is not a basis for the Court to exercise personal jurisdiction over Petra Bank without the existence of "significant independent individual contacts with the forum."  Reply of Defs. 6.  However, the Supreme Court has made clear that a "defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest."  *Shaffer v. Heitner*, 433 U.S. 186, 207–08 (1977).  Indeed, to be subject to the jurisdiction of the courts, a defendant need only purposefully avail himself of "the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights."  *Int'l Shoe*, 326 U.S. at 320.

By taking assignment of the AEGIS Guaranty in 1993, Petra Bank laid a claim to Mr. Farouki's assets, including those located in the District of Columbia, which served as the collateral for the Guaranty.  Petra Bank also laid a claim to these assets by agreeing in 2008 to assign the Guaranty back to PIBC and share in collection proceeds from the Guaranty.  Both the original assignment of the Guaranty to Petra Bank and the later reassignment and collection agreement were made in the District of Columbia.  Moreover, although Petra Bank reassigned the Guaranty to PIBC, Petra Bank stands to receive 90% of any recovery that PIBC collects

under the Guaranty, and has explicitly chosen the law of the District of Columbia to "govern any dispute arising in connection with this assignment." Pl.'s Opp. to Defs.' Mot. to Dismiss Ex. 5. Petra Bank's taking assignment of the AEGIS Guaranty and entering a collection and sharing agreement with regard to the AEGIS Guaranty were neither "irregular nor casual" acts. *See Int'l Shoe*, 326 U.S. at 320. Instead, they were "affirmative, purposeful act[s]" that clearly demonstrate that Petra Bank has purposefully availed itself of the benefits and protection of the laws of the District of Columbia, creating sufficient minimum contacts for this Court to justify exercising personal jurisdiction over Petra Bank.

Mr. Farouki has established by a preponderance of the evidence that personal jurisdiction exists over defendant Petra Bank. The Court will therefore deny Petra Bank's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

### 3. *Defendant Mr. Old's Motion to Dismiss for Lack of Personal Jurisdiction*

Mr. Farouki asserts that the Court has personal jurisdiction over Mr. Old for Counts I, II, III, and IV under D.C. Code § 13-423(a)(1) arising from Mr. Old's renegotiation and alleged release of the AEGIS Guaranty in the District of Columbia while he was General Manager of PIBC in the District of Columbia. Am. Compl. ¶¶ 8, 35, 41, 46–48. According to Mr. Farouki, there is a "discernible relationship" between the business transacted by Mr. Old in the District of Columbia as the General Manager of PIBC and the claims asserted against Mr. Old in the Amended Complaint, and nothing more is required to satisfy D.C. Code § 13-423(a)(1). Pl.'s Opp. to Defs.' Mot. to Dismiss 12. Mr. Farouki also alleges that the Court has personal jurisdiction over Mr. Old for Counts V, VI, and VII under D.C. Code § 13-423(a)(1) based on statements that Mr. Old allegedly made in Jordan in 2003 and 2004. Am. Compl. ¶¶ 54, 55, 92, 99. He premises his assertion on the theory that Mr. Old's statements arose from his negotiation

and alleged release of the AEGIS Guaranty in the District of Columbia.  Pl.'s Opp. to Defs.'
Mot. to Dismiss 14.

The corporate shield doctrine counsels that "personal jurisdiction over the employees or
officers of a corporation in their individual capacities must be based on their personal contacts
with the forum and not their acts and contacts carried out solely in a corporate capacity."
*Wiggins v. Equifax*, 853 F. Supp. 500, 503 (D.D.C. 1994).  When contacts with the forum are
exclusively in relation to the defendant's corporate responsibility, the defendant is "clearly not
'doing business' within the District of Columbia."  *Id.*  "An individual's role as a corporate
officer, without more, is not a sufficient basis for exercising personal jurisdiction over the officer
in his individual capacity."  *Nat'l Cmty. Reinvestment Coal. v. NovaStar Financial, Inc.*, 631 F.
Supp. 2d 1, 5 (D.D.C. 2009).  Under the corporate shield doctrine, acts committed within the
scope of employment cannot be imputed to an individual defendant in order to establish personal
jurisdiction over him because it is the corporation—and not the individual who acts for the
corporation—transacting business under the relevant long-arm statute.  *See Richard v. Bell Atl.
Corp.*, 976 F. Supp. 40, 50 (D.D.C. 1997); *Wiggins*, 835 F. Supp. at 503.  "[A]s a general rule,
courts cannot exert jurisdiction over individual corporate officers or employees 'just because the
court has jurisdiction over the corporation.'"  *Kopff*, 425 F. Supp. 2d at 84 (quoting *Flocco v.
State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 162 (D.C. 2000)).  Under that reasoning, the
corporate shield doctrine has been construed to bar the court from exercising jurisdiction over a
company's Chairman and CEO who was responsible for setting policies and procedures for the
company and was involved in the company's daily decision-making processes because all of the
alleged jurisdictional facts involved the individual defendant's official duties for the corporation.
*See Bell Atl.*, 976 F. Supp. at 49–50.

Thus, in order for this Court to have jurisdiction over Mr. Old, Mr. Farouki must show that Mr. Old, an individual defendant, is subject to personal jurisdiction apart from any jurisdiction that might exist over his corporate employer, PIBC.   *See D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 90–91 (D.D.C. 2008).   However, even without alleging that Mr. Old is subject to this Court's jurisdiction because of acts taken in his individual capacity, Mr. Farouki may demonstrate that Mr. Old is subject to personal jurisdiction in this Court by establishing that Mr. Old is more than an employee of PIBC.   The corporate shield doctrine "is inapplicable when the defendant is found to be 'more than an employee' of the corporation." *Nat'l Cmty. Reinvestment Coal.*, 631 F. Supp. 2d at 5.   For example, the President, Chief Operating Officer, and co-founder of a lending company who personally developed and implemented the company's discriminatory lending policies was found to be more than an employee, and thus subject to the court's personal jurisdiction under D.C. Code § 13-423(a)(1), as a result of the "significant influence" that he exerted over the company's policies, procedures, and operations and his involvement in the creation, implementation, and maintenance of the policies at issue. *Id.* at 8.

Mr. Old has been the General Manager of PIBC since January 1990.  Am. Compl. ¶ 10. Until at least November 1993, Mr. Old managed PIBC from the bank's offices in the District of Columbia. *Id.*  He currently resides in Florida. *Id.*  Since PIBC ceased its banking operations in the early 1990s, the principal effort of the bank has been to collect past debts; "there are no clients, no new loans, no letters of credit, no banking transactions."  Old Dep. 16:16–17:15, July 16, 2009.  Mr. Old is PIBC's only employee and the only person involved in PIBC's operations other than the board of directors. *Id.* 17:6–8.  In his capacity as General Manager of PIBC, Mr. Old reports directly to PIBC's board of directors. *Id.* 29:16–18.  For every $500,000 that Mr.

Old collects for PIBC on the AEGIS Guaranty, he personally receives $8,333. *Id.* 202:16–21. Mr. Old met with Mr. Farouki approximately 50 to 100 times to discuss the release of the AEGIS Guaranty, *id.* 79:3–9, but the parties dispute whether Mr. Farouki was released from the AEGIS Guaranty. *See* Am. Compl. ¶ 48.

Despite his demonstration that Mr. Old held a central position at PIBC as its General Manager, Mr. Farouki has failed to put forth any facts to allow the Court to determine whether the actions taken by Mr. Old as General Manager of PIBC render him "more than an employee" of PIBC, such as whether he possessed decision-making authority surrounding the alleged release of the AEGIS Guaranty. Although the Court "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts," *Philip Morris*, 116 F. Supp. at 120 n.4, plaintiff certainly has not alleged any facts that give the Court a reason to believe that Mr. Old exerted a "significant influence" over the renegotiation and alleged release of the AEGIS Guaranty that would justify this Court's exercise of personal jurisdiction over Mr. Old under D.C. Code § 13-423(a)(1) for Counts I, II, III, or IV.

Mr. Farouki also has not met his burden of proof to establish personal jurisdiction over Mr. Old under D.C. Code § 13-423(a)(1) for Counts V, VI, or VII, tort claims premised on alleged statements made by Mr. Old in 2003 and 2004 to Petra Bank and others in Jordan that Mr. Farouki owed millions of dollars to Petra Bank in connection with the AEGIS Guaranty. Am. Compl. ¶ 54. Mr. Farouki argues that the corporate shield doctrine is inapplicable here because Counts V, VI, and VII against Mr. Old are based on Mr. Old's personal conduct and his personal knowledge of the AEGIS Guaranty's release—obtained while he was in the District of Columbia—and his subsequent statements in Jordan regarding those facts. However, Mr. Farouki has not established by a preponderance of the evidence how this conduct and knowledge

stems from acts taken or knowledge obtained in Mr. Old's individual capacity in the District of Columbia.  Mr. Old's knowledge that forms the basis of Mr. Farouki's claims is not, as Mr. Farouki maintains, "distinguishable from the institutional knowledge of his employer."  Pl.'s Opp. to Defs.' Mot. to Dismiss 16.  Mr. Farouki's allegations, along with the jurisdictional discovery materials submitted by the defendants, merely establish that Mr. Old obtained this information while conducting his official duties as General Manager of PIBC and made statements to Petra Bank regarding the status of the AEGIS Guaranty in connection with his official duties as General Manager of PIBC.  These jurisdictional facts are not enough to warrant the Court to pierce the corporate shield to treat Mr. Old as more than an employee of PIBC and exercise personal jurisdiction over him for Counts V, VI, or VII.

Mr. Farouki has not established by a preponderance of the evidence that personal jurisdiction exists over defendant Mr. Old under D.C. Code § 13-423(a)(1) for any of the counts in the Amended Complaint, nor has he alleged an alternative basis for this Court to exercise personal jurisdiction over Mr. Old.  The Court will therefore uphold the corporate shield and grant Mr. Old's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

### B.  TORT CLAIMS AGAINST DEFENDANT MR. OLD

Defendant Mr. Old also moves to dismiss Counts V, VI, and VII against him for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Although the Court has dismissed these counts on the ground that the plaintiff did not meet his burden of proof with regard to personal jurisdiction over Mr. Old, the Court will briefly address Mr. Old's 12(b)(6) motion here as well.  Even assuming *arguendo* that Court had found that Mr. Farouki established sufficient jurisdictional facts to prove that Mr. Old

is "more than an employee" of PIBC, Mr. Farouki's tort claims against Mr. Old fail to state a claim upon which relief may be granted.

### 1.   *Legal Standard*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To satisfy this test, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*; *see also Atherton*, 567 F.3d at 681 (holding that a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### 2.   *Injurious Falsehood*

Count V of Mr. Farouki's Amended Complaint alleges that Mr. Old committed the tort of injurious falsehood[1] when he made statements to Petra Bank and other individuals in Jordan that

---

[1] "Injurious falsehood" is generally used to describe a group of torts also known as disparagement of property, slander of title, or trade libel.  It is closely related to traditional slander and libel except that the injury is not to personal reputation, but rather to the plaintiff's interest in, or the quality of, the plaintiff's property. *See Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 81 n.5 (D.D.C. 2004) (citing *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 n.6 (D.C. Cir. 1985)).  Liability for a claim of injurious falsehood requires proof that (1) the defendant made an unprivileged publication of false statements concerning the plaintiff's property or

Mr. Farouki's obligations under the AEGIS Guaranty remain outstanding.   An injurious falsehood claim requires the plaintiff to plead "special damages." *Fowler v. Curtis Publ'g Co.*, 182 F.2d 377, 378 (D.C. Cir. 1950).   Federal Rule of Civil Procedure 9(g) requires that special damages be "specifically stated," that is, the plaintiff must allege actual damages with "particularity" and specify "'facts showing that such special damages were the natural and direct result'" of the defendant's conduct.   *Fowler*, 182 F.2d at 379 (quoting *Erick Bowman Remedy Co. v. Jensen Salsbery Labs.*, 17 F.2d 255, 261 (8th Cir. 1926)).   This heightened pleading standard applies because special damages, unlike general damages, are "not the necessary consequence of [the] defendant's conduct, [but] stem from the particular circumstances of the case."   5 WRIGHT & MILLER § 1310, at 700.   "A plaintiff can satisfy this pleading obligation by identifying either particular customers whose business has been lost or facts showing an established business and the amount of sales before and after the disparaging publication, along with evidence of causation."   *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002).

In the Amended Complaint, Mr. Farouki alleges that after Mr. Old reported to Petra Bank that Mr. Farouki's obligations under the AEGIS Guaranty remain outstanding, third-party government contractors temporarily ceased transactions with ANHAM L.L.C., Mr. Farouki's federal government contracting firm.   Am. Compl. ¶¶ 92, 93.   The Amended Complaint further alleges that as a result, ANHAM L.L.C. "lost significant revenue and profits."   Mr. Farouki has failed, however, to present facts to demonstrate ANHAM L.L.C.'s revenue and profits before and after Mr. Old made the statements, nor has Mr. Farouki specified facts showing that these damages were the "natural and direct result" of Mr. Old's statements.   *See Browning*, 292 F.3d at 245.   Mr. Farouki therefore has not met the heightened pleading standard for a claim of injurious

---

product, (2) the defendant's publication was made with knowledge or reckless disregard of the falsity of the statement, and (3) the defendant was the proximate cause of pecuniary harm to the plaintiff.   *See id.*

falsehood under Rule 9(g).  As such, the Court grants Mr. Old's motion to dismiss Count V under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### 3. *Defamation*

In Count VI of the Amended Complaint, Mr. Farouki alleges that he was defamed by Mr. Old.  To make out a claim for defamation, a plaintiff must demonstrate by a preponderance of the evidence that the statements made about him were false.  *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (citing *Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994).  If a publication is substantially true, then it is considered to be true as a legal matter for defamation purposes.  *See Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004).

Mr. Farouki alleges that Mr. Old defamed him by "falsely" reporting to Petra Bank, members of the Jordanian Central Bank, and others with whom Mr. Farouki was collaborating on certain business ventures that Mr. Farouki owed a substantial debt to Petra Bank under the AEGIS Guaranty. Am. Compl. ¶ 99.  Mr. Farouki further alleges that these statements are false because he was released from the Guaranty in 1993, which was allegedly confirmed by a written document from Mr. Old to Mr. Farouki.  *Id.* ¶ 48.  However, Mr. Farouki cannot produce this written document and has offered no other proof, other than his allegations in the Amended Complaint, to prove the falsity of Mr. Old's statements.  The Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Iqbal*, 129 S. Ct. at 1949.  The Court also many not accept "legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1275.  Mr. Farouki's allegations that Mr. Old's statements were false, without more, are mere legal conclusions "cast in the form of factual allegations." *Id.*  As Mr. Farouki has therefore not demonstrated by a preponderance of the

evidence that Mr. Old's statements were false, the Court will grant Mr. Old's motion to dismiss Count VI for failure to state a claim upon which relief may be granted.

### 4. *Tortious Interference with Contract*

The Amended Complaint alleges that Mr. Farouki negotiated the release of the AEGIS Guaranty with Mr. Old acting on behalf of PIBC as its General Manager.  Am. Compl. ¶¶ 41, 43–44, 48.  Count VII alleges that Mr. Old, who is still the General Manager of PIBC, "intentionally procured PIBC's breach of the settlement agreement entered between PIBC and Mr. Farouki concerning the release of the AEGIS Guaranty," thereby tortuously interfering[2] with the settlement agreement between Mr. Farouki and PIBC.  *Id.* ¶¶ 102–05.

The alleged tort, interference with contractual relations, arises only when there is interference with a contract between the plaintiff and a third party.  *Newman v. Legal Servs. Corp.*, 628 F. Supp. 535, 541 (D.D.C. 1986); *Donohoe v. Watt*, 546 F. Supp. 753, 757 (D.D.C. 1982), *aff'd*, 713 F.2d 864 (D.C. Cir. 1983).  The tort does not lie when the defendant himself is a party to the contract.  *Farmland Indus., Inc. v. Grain Bd. of Iraq*, 904 F.2d 732, 738 (D.C. Cir. 1990).  "A defendant's conduct under his own contract with the plaintiff may or may not rise to the level of a breach of that contract, but it cannot support an action for interference with it." *Donohoe*, 546 F. Supp. at 757.

As a matter of law, a corporate officer is privileged to induce the corporation to violate a contractual relation, provided that the officer does not exceed the scope of his authority or knowingly commit acts that are adverse to the interests of the corporation.  *See Curaflex Health Servs., Inc. v. Bruni*, 899 F. Supp. 689, 695 (D.D.C. 1995).  In other words, a corporate officer, as an agent of the corporation, cannot be held liable for tortious interference with a contract

---

[2] The elements of a claim for tortious interference with a contract are: (1) the existence of a contract, (2) knowledge of the contract, (3) intentional procurement of the contract's breach by the defendant, and (4) damages resulting from the breach.  *See Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 288 (D.C. 1977).

between the plaintiff and the corporation. *Newman*, 628 F. Supp. at 541; *Donohue*, 546 F. Supp. at 757. As long as a corporate officer acts in the corporation's interests and is acting within the scope of his authority, his personal motivation for influencing the corporation to breach the contract is irrelevant, even if his actions happen to benefit himself or he acts with ill will towards another. *Curaflex*, 899 F. Supp. at 695–96.

Mr. Old, as General Manager of PIBC, acted on behalf of PIBC when he negotiated the release of the AEGIS Guaranty with Mr. Farouki. In this capacity, Mr. Old is effectively a party to the Guaranty. As such, an action for tortious interference with the Guaranty does not lie against Mr. Old. The Court will therefore grant Mr. Old's motion to dismiss Count VII under Rule 12(b)(6) for failure to state a claim for tortious interference with contractual relations.

### C. VENUE

Mr. Old also moves to dismiss Counts V, VI, and VII for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3). The Court need not address this argument after finding that these counts will be dismissed for lack of personal jurisdiction, or in the alternative, for failure to state a claim upon which relief may be granted.

### D. COUNTS I, II, III, AND IV AGAINST DEFENDANTS PETRA BANK AND PIBC

At this point, the only remaining claims for the Court to consider are Counts I, II, III, and IV against defendants Petra Bank and PIBC, as those counts have been dismissed against Mr. Old for lack of personal jurisdiction.

#### 1. Laches

Count III of the Amended Complaint asks the Court for a declaratory judgment that any actions by Petra Bank and PIBC to enforce or collect on the AEGIS Guaranty are barred by the

doctrine of laches.  Am. Compl. ¶¶ 78–84.  Defendants Petra Bank and PIBC have moved to dismiss this count pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

Defendants Petra Bank and PIBC argue that laches, as a defense in equity, cannot be asserted by Mr. Farouki in an action at law.  Mr. Farouki asserts that the doctrine of laches can be applied to bar an award of damages as well.  The plaintiff seems to misunderstand the doctrine of laches and its application to the present case entirely.  It is well established under District of Columbia law that laches is a defense to an action in equity, but even if laches could be asserted as a defense to an action on a guaranty, Mr. Farouki could not bring that claim in his complaint.  Laches is not an independent cause of action, but rather an affirmative defense[3] in equity that Mr. Farouki could assert in an action to collect on the Guaranty brought by Petra Bank and PIBC.  Although PIBC has brought a counterclaim against Mr. Farouki to collect on the Guaranty,  Mr. Farouki has not asserted laches in his motion to dismiss PIBC's counterclaim, so the Court will not consider its validity as an affirmative defense to PIBC's counterclaim.  Because "only a complaint that states a plausible claim for relief survives a motion to dismiss," the Court will dismiss Count III of the Amended Complaint for failure to state a claim upon which relief may be granted.  *Iqbal*, 129 S. Ct. at 1949.

### 2. *Promissory Estoppel*

Count IV of the Amended Complaint alleges that the doctrine of promissory estoppel should be applied by the Court to enforce the alleged release of Mr. Farouki's obligations under

---

[3] The Court has found numerous cases explaining that laches is an affirmative defense to an action in equity and not to an action at law.  *See, e.g.*, *N.A.A.C.P. v. N.A.A.C.P. Legal Defense & Educ. Fund, Inc.*, 753 F.2d 131, 137–38 (D.C. Cir. 1985); *Powell v. Zuckert*, 366 F.2d 634, 636 (D.C. Cir. 1966).  However, there is no case law establishing that the doctrine of laches may be asserted by the plaintiff as an independent cause of action, quite possibly because the use of laches as an independent cause of action runs so counter to its established function as an affirmative defense that no court has ever found it necessary to explicitly state that laches is a defense and not a cause of action. *See, e.g.*, FED. R. CIV. PRO. 8(c) (1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . laches . . . .").

the AEGIS Guaranty.  Am. Compl. ¶¶ 85–88.  PIBC and Petra Bank move to dismiss this count for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  For a claim of promissory estoppel to lie, there must be evidence of a promise, the promise must reasonably induce reliance upon it, and the promise must be relied upon to the detriment of the promisee.  *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994).  The theory may only be invoked when "injustice otherwise [would] not [be] avoidable."  *Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C. 1979).

In the Amended Complaint, Mr. Farouki alleges that in 1993, Mr. Old, acting on behalf of PIBC and Petra Bank, promised to cause the release of the AEGIS Guaranty and that Mr. Farouki reasonably relied on this promise by releasing his and AEGIS's lender liability cause of action against PIBC.  Am. Compl. ¶ 86–87.  Mr. Farouki also alleges that enforcement of the promise would be "in the public interest and would prevent further injustice."  *Id.* ¶ 88.  However, the Amended Complaint fails to show how Mr. Farouki relied upon the promise to his detriment.  Without this showing of detrimental reliance on the part of Mr. Farouki, the Amended Complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 555.  The Court will therefore grant PIBC and Petra Bank's 12(b)(6) motion to dismiss Count  IV for failure to state a claim upon which relief may be granted.

### 3. *Statute of Limitations*

Count II of Mr. Farouki's Amended Complaint asks the Court for a declaratory judgment that PIBC and Petra Bank's efforts to collect on the Guaranty are time-barred.  Am. Compl. ¶¶ 72–77.  Although Mr. Farouki cites the statute of limitations as the basis for this cause of action in the Amended Complaint, he again asserts the statute of limitations as a defense to PIBC's

counterclaim against him.  The Court will only address the statute of limitations as it was raised in Mr. Farouki's motion to dismiss PIBC's counterclaim.

In its counterclaim, PIBC asks the Court to enter a judgment against Mr. Farouki for damages stemming from his alleged refusal to fulfill his obligations under the AEGIS Guaranty. Countercl. of Def. PIBC ¶ 36.  PIBC sets forth a two-pronged basis for its counterclaim.  First, PIBC alleges that the Guaranty is a contract that was executed under seal, making it subject to the twelve-year statute of limitations for sealed instruments set forth in D.C. Code § 12-301(6), rather than the three-year statute of limitations that applies to simple contracts under D.C. Code § 12-301(7).  Countercl. of Def. PIBC ¶ 15.  Second, PIBC alleges that its claims against Mr. Farouki under the Guaranty did not accrue until "at least 1997" when PIBC ceased its collection efforts on the collateral underlying the AEGIS Loan.  Countercl. of Def. PIBC ¶ 28.  Mr. Farouki has moved to dismiss PIBC's counterclaim on the basis of Federal Rule of Civil Procedure 12(b)(6).  Specifically, Mr. Farouki argues that PIBC's claim is time-barred by the applicable statute of limitations, which he asserts is three years.

The affirmative defense of statute of limitations may be raised via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.  *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).  Because, however, statute of limitations issues often turn on contested questions of fact, the Court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Rather, the Court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred.  *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).  If "no reasonable person could disagree on the date" on which the cause of action accrued, the Court may dismiss a claim on statute of

limitations grounds. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

In order to determine whether PIBC's counterclaim is time-barred, the Court first must determine the applicable statute of limitations. This inquiry turns on whether the AEGIS Guaranty is a contract under seal subject to the twelve-year statute of limitations in D.C. Code § 12-301(6) or a simple contract subject to the three-year statute of limitations in D.C. Code § 12-301(7).

"Courts have been reluctant to declare a document to be sealed in the absence of evidence that the parties intended it to be under seal"—the parties' intent controls. *Huntley v. Bortolussi*, 667 A.2d 1362, 1365 (D.C. 1995). A party is not required to provide extrinsic evidence to prove intent to create a sealed document, however. *Burgess v. Square 3324 Hampshire Gardens Apartments, Inc.*, 691 A.2d 1153, 1156 (D.C. 1997) (citing *Harrod*, 179 A.2d at 432). "A proper determination of whether a document is under seal is limited in the first instance to an examination of the face of the document itself." *Burgess*, 691 A.2d at 1156. The prevailing view is that "the seal may consist of any substance affixed to the document or the use of an impression such as that customarily used by notaries and corporations, or the use of any other mark, work symbol, scrawl, or sign intended to operate as a seal." 1 WILLISTON ON CONTRACTS § 2:4 (2007). "[T]he presence of the word 'seal' next to an individual's signature is, standing alone, sufficient to create a sealed instrument entitled to the twelve-year statute of limitations." *Burgess*, 691 A.2d at 1157. The presence of the word "seal" in parentheses opposite the signature also "'undoubtedly evinces an intention to make the instrument a sealed instrument.'" *Id.* at 1156 (quoting *Harrod v. Kelly Adjustment Co.*, 179 A.2d 431, 432 (D.C. 1962)). And the

corporate seal of a party plus an attestation clause that "expressly states that in witness of the document, the parties are, on the part of the corporation, affixing its corporate seal, and, on the part of the lessee, setting his hand and seal" are sufficient to create a sealed instrument. *Id.*

The AEGIS Guaranty, on its face, does not contain an actual seal or the word "seal" next to or opposite Mr. Farouki's signature. Countercl. of Def. PIBC Ex. 1, at 5. There is no attestation clause in the Guaranty to indicate that Mr. Farouki intended to sign the instrument under seal. *See id.* While one of the recital clauses preceding the body of the Guaranty states that "Lender has agreed to make the Loan upon the express condition that this Guaranty Agreement be executed, sealed and delivered by Guarantors," Countercl. of Def. PIBC Ex. 1, at 1, this mere statement of a condition is not enough, without more, to evidence actual intent on the part of Mr. Farouki to execute the Guaranty under seal when he signed the instrument. Where a recital clause and the operative part of the contract are consistent, the recital clause can be considered evidence of the parties' intent, but if the recital clause and operative part of the contract are clear yet inconsistent with one another, the operative portion of the contract is controlling. *See Trilon Plaza, Inc. v. Comptroller of State of New York*, 788 A.2d 146, 150–51 (citing *Perry v. Perry*, 190 F.2d 601 (D.C. 1951)). Absent any indication in the body of the Guaranty that the parties actually intended to seal the Guaranty when they signed it, the Court will not construe the conditional language in the recital clause as an intent to execute the Guaranty under seal.

PIBC argues that when Mr. Farouki signed the Guaranty, which was subsequently notarized, Mr. Farouki adopted the notary's seal as his own. A party to a contract "may adopt the seal of another as its own." *McNulty v. Medical Serv. of District of Columbia, Inc.*, 176 A.2d 783, 784 (D.C. 1962). "[W]hen one party signs an instrument to which another has affixed his

seal, there is a presumption that he has adopted that seal." *Id.* However, the District of Columbia Court of Appeals has found that there was no indication that the parties to a contract intended to adopt notary stamps as their seals where their signatures were affixed before the notary seals were placed on the document and the language above the notary stamps certified nothing more than that the parties each signed the agreement in front of a notary public. *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 319 (D.C. 2008). The AEGIS Guaranty is no different. The function of the notary public who signed the Guaranty was to serve as a witness to Mr. Farouki's signature, and therefore necessarily signed and stamped the document after Mr. Farouki signed it. *See* Countercl. of Def. PIBC Ex. 1, at 5. Mr. Farouki could not have adopted the notary's stamp as his own seal because the Guaranty was not stamped when he signed it. Moreover, if the Court were to allow a notary's seal to be adopted as a party's own seal, it would subject every document notarized in the District of Columbia to a twelve-year statute of limitations without regard to the parties' actual intent. The Court will therefore consider whether PIBC's claims under the AEGIS Guaranty are time-barred under the three-year statute of limitations for a simple contract.

Next, to determine whether PIBC's cause of action against Mr. Farouki is conclusively time-barred, the Court must look to when the cause of action accrued. "It is undisputed that the statute of limitations begins to run when a claim accrues, and that a cause of action accrues when its elements are present, so that the plaintiff could maintain a successful suit." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (citing *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 660–61 (D.C. 1997)). "The statute of limitations begins to run in the District of Columbia from the date a contract is breached." *Fowler v. A & A Co.*, 262 A.2d 344, 347 (D.C. 1970). The fact that damages are not immediately ascertainable at the time of the

breach of contract will not toll the statute of limitations.  *Foley Corp. v. Dove*, 101 A.2d 841, 842

(D.C. 1954).

    Under the express language of the Guaranty, certain events of default would cause

PIBC's claims against Mr. Farouki to accrue:

> At the option of the Lender and with or without demand or notice, all or any part
> of the indebtedness and all or any part of Guarantors' obligations hereunder shall
> become due and payable immediately, irrespective of any agreed maturity, upon
> the happening of one or more of the following events: . . . (5) the insolvency or
> appointment of a receiver of the business or property of Borrower . . . or filing of
> any petition in bankruptcy for relief under the Bankruptcy Code, by or against
> Borrower . . . .

Pl.'s Mot. to Dismiss Countercl. Ex. 2 ¶ 7.  Accordingly, an event of default occurred on April

30, 1987 when AEGIS, the borrower under the AEGIS Loan, filed for Chapter 11 bankruptcy.

*See* Pl.'s Mot. to Dismiss Countercl. Ex. 4.  This filing commenced the running of the three-year

statute of limitations on PIBC's claims against Mr. Farouki under the Guaranty, "with or without

demand or notice" from PIBC.  *See* Pl.'s Mot. to Dismiss Countercl. Ex. 2 ¶ 7.  The statute of

limitations on PIBC's counterclaim therefore ran on April 30, 1990.[4]

    PIBC's counterclaim is based on the premise that its cause of action against Mr. Farouki

did not accrue until "at least 1997," when PIBC supposedly exhausted its collection efforts on

AEGIS's claims and accounts receivables that served as collateral for the AEGIS Loan, because

Mr. Farouki's liability under the Guaranty could not be ascertained until these collection efforts

were exhausted.  Countercl. of Def. PIBC ¶ 27–28.  However, PIBC's exhaustion of these

collection efforts is irrelevant to the time the cause of action accrued because under the

---

[4] PIBC asks the Court to rely on a case holding that modification of a primary loan tolls the running of the statute of limitations on an action to enforce a guaranty.  *See U.S. v. Rollinson*, 866 F.2d 1463 (D.C. Cir. 1989).  However, that case was an action brought by the U.S. government under 28 U.S.C. § 2415(a) seeking repayment from defendants pursuant to a guaranty agreement executed in favor of the Small Business Administration.  *See id.*  Under that guaranty agreement, demand was necessary to perfect a cause of action and commence the running of the statute of limitations, *see id.*, whereas under the AEGIS Guaranty, the guarantor's obligations became due and payable immediately upon the occurrence of an event of default, "with or without demand or notice."  Pl.'s Mot. to Dismiss Countercl. Ex. 2 ¶ 7.

Guaranty, "Guarantors waive any right to require Lender to (a) proceed against Borrower; (b) proceed against or exhaust any security held from Borrower; or (c) pursue any other remedy in Lender's power whatsoever." Pl.'s Mot. to Dismiss Countercl. Ex. 2 ¶ 6. Under the Guaranty, PIBC was not required to exhaust its collection efforts before proceeding against Mr. Farouki for payment—PIBC was entitled to seek payment from Mr. Farouki on the date that AEGIS filed for Chapter 7 bankruptcy in 1987, causing the statute of limitations to commence running at that point.[5]

The Court has found that the AEGIS Guaranty was not an instrument under seal and is therefore subject to the three-year statute of limitations under D.C. Code § 12-301(7) for simple contracts. The Court has also found that pursuant to the events of default specified in the Guaranty, this statute of limitations ran on April 30, 1990, three years after the date that AEGIS filed for Chapter 7 bankruptcy. As such, the complaint on its face is conclusively time-barred, and the Court will grant Mr. Farouki's motion to dismiss defendant PIBC's counterclaim pursuant to Rule 12(b)(6).

### 4. *Declaratory Judgment for Release of Personal Guaranty*

In Count I of the Amended Complaint, Mr. Farouki asks the Court for a declaratory judgment releasing him from the AEGIS Guaranty in order to prevent Petra Bank and PIBC from seeking to collect on the Guaranty. By counterclaiming against Mr. Farouki, PIBC has conceded this Court's jurisdiction over it. The Court has also found that it has jurisdiction over Petra

---

[5] PIBC's position that opting to pursue another remedy tolls the statute of limitations in its action against Mr. Farouki is without merit. Under PIBC's theory, a creditor could maintain an action for repayment against a debtor virtually indefinitely if chose to delay its collection efforts, contradicting the purpose of a statute of limitations altogether. Moreover, PIBC has failed to specify an exact date in 1997 when its collection efforts were exhausted, supposedly triggering the running of the statute of limitations. And even if, *arguendo*, the statute of limitations could have been tolled during PIBC's collection efforts until 1997, the three-year statute of limitations would have run in 2000, long before this action was commenced.

Bank.  As Petra Bank and PIBC have offered no support for their motion to dismiss Count I, this claim remains standing against defendants Petra Bank and PIBC.

This Court has ruled that it has the authority to enter summary judgment *sua sponte*, in the absence of a motion from either party.  *Judicial Watch v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 45 (D.D.C. 1998).  Under Federal Rule of Civil Procedure 12(d), the Court must treat a Rule 12(b)(6) motion to dismiss as a Rule 56 motion for summary judgment if (1) "matters outside the pleadings are presented to and not excluded by the court" and (2) all parties have been "given a reasonable opportunity to present all the material that is pertinent to the motion."  Under Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment if it finds that "there is no genuine dispute as to any material fact," entitling one party to "judgment as a matter of law."  The Court finds that the parties have been given a reasonable opportunity to present all of the material that would be pertinent to a summary judgment motion on Count I, including documentation surrounding the AEGIS Loan and Guaranty, the assignment and reassignment thereof, and AEGIS's Chapter 7 and Chapter 11 bankruptcy filings.  Although Mr. Farouki has not presented evidence of a written release of the AEGIS Guaranty, the Court has found that PIBC is time-barred from collecting on the Guaranty.  The applicable statute of limitations likewise bars defendant Petra Bank from collecting on the Guaranty.  As no genuine issue of material fact remains, the Court will *sua sponte* enter summary judgment for Mr. Farouki and grant him declaratory relief releasing him from liability under the AEGIS Guaranty.

## III.    <u>CONCLUSION</u>

For the reasons stated herein, the Court will grant in part and deny in part defendants' Motion to Dismiss Amended Complaint.  As to defendant Mr. Old, the motion will be granted in its entirety.  As to defendants Petra Bank and PIBC, the motion will be granted as to Counts II,

III, and IV and the motion will be denied as to Count I.   The Court also grants summary judgment *sua sponte* for Mr. Farouki on Count I, entering a declaratory judgment releasing Mr. Farouki from liability under the AEGIS Guaranty.   Finally, the Court will grant plaintiff's Motion to Dismiss Counterclaim.

A separate Order consistent with this Memorandum Opinion shall issue this date.


Signed by Royce C. Lamberth, Chief Judge, on September 20, 2011.