UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| A. HUDA FAROUKI | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil No. 08-2137 (RCL) ) |
| PETRA INTERNATIONAL BANKING CORP., *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This matter comes before the Court upon plaintiff and counter-defendant A. Huda Farouki's Motion to Dismiss the Second Amended Counterclaim of defendant and counter-plaintiff Petra International Banking Corporation. Upon consideration of Mr. Farouki's motion [85], Petra's opposition thereto [87], and Mr. Farouki's reply [89], the Court will GRANT Mr. Farouki's Motion to Dismiss the Second Amended Counterclaim. Additionally, the Court hereby notifies the parties of its intent to enter summary judgment in favor of Mr. Farouki on Count I of his Amended Complaint.

I.  BACKGROUND

Twenty-seven years ago, in 1986, Petra International Banking Corporation ("PIBC" or "Petra") and American Export Group International Services, Inc. ("AEGIS"), entered into a Secured Credit Facility Agreement ("SCFA") and accompanying promissory note ("the Note"), establishing a line of credit through which PIBC advanced $3.7 million to AEGIS. *See* Second Am. Countercl. ¶ 10, ECF No. 83 [hereinafter Countercl.]; Resp. to Mot. for Leave to File

Second Am. Countercl., Ex. D (Promissory Note, Nov. 12, 1986), at 2 [hereinafter Note]. A. Huda Farouki, founder and director of AEGIS, personally guarantied the Note. Countercl. ¶ 3, 11. The Guaranty authorized PIBC to unilaterally change the terms of the loan or the time for payment of the Note; however, the Guaranty did *not* authorize increases in the principal amount owed. Countercl., Ex. B (Guaranty Agreement), at ¶¶ 1–4 [hereinafter Guaranty]. A recital clause at the outset of the Guaranty stated that the underlying loan was made on the condition that the Guaranty "be executed, sealed and delivered." *Id*. at 1. Mr. Farouki's signature on the Guaranty is followed by the signature and seal of a notary certifying that Mr. Farouki "executed the [agreement] . . . as his own free act and deed." *Id*. at 5; Countercl. ¶ 11.

Less than one year later, in April 1987, AEGIS filed a Chapter 11 bankruptcy petition, which triggered PIBC's right to sue Mr. Farouki under the terms of the Guaranty. Countercl. ¶ 16. But rather than seeking to enforce the Guaranty, PIBC "furnished millions of dollars of additional financing to AEGIS." Countercl. ¶ 19. To this end, PIBC and AEGIS executed eleven allonges to the Note and twelve amendments to the SCFA, ultimately increasing the loan amount to more than ten million dollars. *Id.*; *see also* Countercl., Ex. F (Eleventh Allonge to Promissory Note, Apr. 17, 1990) [hereinafter Eleventh Allonge]. Mr. Farouki was not a party to any of the allonges or amendments. AEGIS's effort to repay the loan continued through March 1998, and a large portion of the debt remains outstanding.

In 2008, Farouki sued PIBC, seeking a declaratory judgment that he did not have any obligations under the Guaranty. PIBC counter-sued in early 2009, seeking to enforce the Guaranty. This Court dismissed PIBC's counterclaim, concluding that it was time-barred under the three-year statute of limitations applicable to simple contracts in the District of Columbia,

D.C. Code § 12-301(7), and granted Mr. Farouki summary judgment on his claim for declaratory relief. *Farouki v. Petra Intern. Banking Corp.*, 811 F. Supp. 2d 388, 409–10 (D.D.C. 2011).

PIBC appealed, and the United States Court of Appeals for the District of Columbia Circuit affirmed in part and reversed in part. *See Farouki v. Petra Intern. Banking Corp.*, 705 F.3d 515, 516 (D.C. Cir. 2013). The Circuit agreed that "Petra's claim is time-barred," *id*. at 516, but reversed the Court's *sua sponte* entry of summary judgment in favor of Farouki, stating:

> Petra separately contends that the District Court entered summary judgment sua sponte in favor of Farouki improperly because it afforded Petra neither notice nor opportunity to respond, as required by Federal Rule of Civil Procedure 56(f)(3). We have previously held that erroneous entries of summary judgment may be harmless under Rule 56 where "a nonmoving party could not have produced any evidence sufficient to create a substantial question of fact material to the governing issues of the case." *Colbert v. Potter*, 471 F.3d 158, 168 (D.C. Cir. 2006) (internal quotation marks and citation omitted). We cannot conclude that was the case here. The question, under [*United States v.*] *Rollinson*, [866 F.2d 1463, 1470 (D.C. Cir. 1989)] was whether the parties modified their contract such that a new accrual date fell within 12 years of Petra filing its counterclaim. At the time the District Court made its decision, it did not know whether Petra could have met the standard announced in *Colbert*. And while nothing in the record or a proffer on appeal indicates that the modification, if it occurred, occurred at a time where the accrual date would fall within the limitations period, notice and opportunity to respond might have produced evidence of consequence bearing on the factual issue at hand. Petra should have the opportunity to produce such evidence.

*Id*. at 517.[1] As such, the Court of Appeals "vacate[d] the District Court's grant of summary judgment and remand[ed] for further proceedings." *Id*.

On remand, this Court granted Petra's motion for leave to file an amended counterclaim "pleading the facts that its claim is not time-barred or, at a minimum, establishing the existence of genuine issues of disputed material facts as to the timeliness of PIBC's claim." Statement of P. & A.'s ISO Petra's Mot. for Leave to File Second Am. Countercl. 3, ECF No. 79. PIBC filed

---

[1] The Circuit assumed, without deciding, that the Guaranty was a sealed instrument and that a 12-year statute of limitations therefore applied. 705 F.3d at 516; *see also* D.C. Code § 12-301(6) (setting 12-year limitations period for sealed instruments). For the reasons stated in its prior opinion and discussed in Section II.A.2, *infra*, the Court finds that the 12-year statute of limitations for sealed instruments does not apply here.

3

its Second Amended Counterclaim, and Mr. Farouki moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     ANALYSIS

### A.     Motion to Dismiss the Second Amended Counterclaim

#### 1.     Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). In deciding the motion, the Court must "accept the plaintiff's factual allegations as true and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Browning*, 292 F.3d at 242 (internal quotations omitted).

#### 2.     Discussion

In its Second Amended Counterclaim, PIBC did not, as invited by the Circuit, amend its complaint to plead a modification to the Guaranty agreement "such that [,under *Rollinson*, 866 F.2d at 1470,] a new accrual date fell within 12 years of [PIBC] filing its counterclaim."[2] 705 F.3d at 517. Rather, PIBC advanced an entirely new legal theory of the case, and pleaded an additional fact that would, if the Guaranty were subject to a 12-year statute of limitations, make PIBC's counterclaim timely. The Court will address each of these in turn.

---

[2] The Court need not decide whether the allonges to the Note or the amendments to the SCFA were sufficient to toll the statute of limitations under *Rollinson*. The last of these documents were executed in 1990, and there is no statute of limitations under which these modifications would render PIBC's counterclaim timely.

Moreover, the Court questions the applicability of *Rollinson*, which is a federal case examining a federal statute. The Guaranty explicitly states that it is governed by the law of the District of Columbia, Guaranty at 5, and in diversity cases such as this, the Court "must look to local law for the applicable statute of limitations," *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 460 (D.C. Cir. 1989); s*ee also, e.g.*, *Guaranty Trust Co. v. York*, 326 U.S. 99, 110–11 (1945).

4

### a.  The Note As A Negotiable Instrument

In order to take advantage of the protracted statute of limitations afforded to commercial paper by the D.C. Code, PIBC argues that the "Note *as amended by the 11th Allonge* is a negotiable instrument." Statement of P. & A. ISO Opp'n to Mot. to Dismiss Opp'n 13, ECF No. 87 (emphasis added) [hereinafter Opp'n]; *see also* D.C. Code § 28:3-118(b) (defining the statute of limitations for negotiable instruments as six years after the last demand for payment). Critically, however, Mr. Farouki did not sign the Eleventh Allonge. Indeed, Mr. Farouki signed only one document in his individual capacity—the Guaranty. By its terms, the Guaranty extended only to changes to the *terms* or *time* for payment of the Note and expressly excluded amendments to the principal amount, such as the Eleventh Allonge. Guaranty ¶ 1 ("It is understood that this Guaranty is limited to the payment of the Note . . . and shall not extend to any other sums or obligations owed by Borrower to Lender."). Any personal liability assigned to Mr. Farouki must therefore arise from the Guaranty and the underlying Note.

Under D.C. law, a guaranty is treated as a negotiable instrument when it guaranties, and is executed during same transaction as, a negotiable instrument. *Cusimano v. First Maryland Sav. & Loan, Inc.*, 639 A.2d 553, 559 (D.C. 1994). Thus, the question whether the Farouki Guaranty is negotiable turns upon whether the Note itself is a negotiable instrument.

A negotiable instrument is an "unconditional promise or order to pay a fixed amount of money" that (1) is payable to order; (2) is payable on demand; and (3) does not state any other undertaking or instruction. D.C. Code § 28:3-104. The Note guarantied by Mr. Farouki is payable to order and on demand; however, it fails every other prong of the statutory definition.

*First*, is not unconditional because the rights and obligations under the Note are defined by reference to the Secured Credit Facility Agreement. *See* Note at 2.; *see also* 6 William D.

Hawkland & Lary Lawrence, UCC Series § 3-106:2 ("[A] writing is conditional if it states that rights or obligations with respect to the promise or order are stated in another writing."). *Second*, the Note does not contain a promise to pay a fixed amount of money, but only "so much . . . as shall be advanced" of the $ 3.7 million principal amount. *See* Note at 1; *see also* Hawkland et al., § 3-104:7 ("A fixed amount is an absolute requisite to negotiability."). The amount owed is not discernible from the face of the Note, but depends upon the amount advanced pursuant to the line of credit facility and drawn under letters of credit. *See* Note at 2. This introduces an "element of uncertainty . . . as to the amount payable under [the] instrument" and destroys negotiability. Hawkland et al., § 3-104:7. For this reason, most authorities agree that credit facilities are not negotiable. *See, e.g*., Jill Gustafson et al., 11 Am. Jur. 2d Bills and Notes § 84 ("A note given to secure a line of credit under which the amount of the obligation varies, depending on the extent to which the line of credit is used, is not negotiable"); *see also In re 1301 Connecticut Ave. Associates*, 126 B.R. 823, 831 (Bankr. D.D.C. 1991) (applying D.C. law to hold that a note "for the principal sum . . . or so much thereof as may be advanced hereunder" is non-negotiable). *Third*, by incorporating the SCFA and other documents, *see* Note at 2, the Note states other undertakings or instructions. As just one example, the SCFA requires the borrowers to "[m]aintain, preserve and protect all licenses, patents, franchises, trademarks and trade names." Countercl., Ex. A (Secured Credit Facility Agreement, Nov. 12, 1986).

For all of these reasons, neither the Guaranty nor the underlying promissory Note is negotiable under D.C. law and the six-year statute of limitations does not apply.

### b. The Unsealed Guaranty

PIBC next argues that its counterclaim was timely because Mr. Farouki personally made a payment to PIBC in October 1997, which revived the debt and tolled the statute of limitations

6

on the Guaranty. *See, e.g.*, *Dulberger v. Lippe*, 202 A.2d 777, 778 (D.C. 1964) ("[P]art payment on a debt or obligation interrupts or tolls the statute of limitations."); 54 C.J.S. Limitations of Actions § 392 (noting that payment by guarantor tolls statute of limitations as to principal debt). Even accepting this fact as true, however, PIBC's claim remains time barred given this Court's prior ruling that a three-year statute of limitations—and not the 12-year limitations period for sealed instruments—applies to this case. PIBC contends that this ruling "was mistaken" because the recital clause of the Guaranty is definitive evidence of the parties' intent to create a sealed instrument. Opp'n at 25. But the parties' intent is meaningless if they did not actually *seal* the deal. *See Murray v. Wells Fargo Home Mortgage*, 953 A.2d 308, 318 (D.C. 2008) (holding that recital of intent to seal, "in the absence of a seal, does not operate to make the instrument one under seal. It is the attachment or adoption of a seal that is the operative fact."). To this point, PIBC persists in its argument that "the signature of Farouki was contemporaneously put under seal by the notary public in his presence." Opp'n at 27. This misapprehends the role of a notary public. A "notary stamp[] certifies that [Mr. Farouki] signed the agreement in front of a notary public, but it suggests nothing more." *Murray*, 953 A.2d at 319. This is especially true given that, as in *Murray*, Mr. Farouki's signature was "affixed *before* the notary seals were placed on the document." *Id.* (emphasis added). Consequently, Mr. Farouki could not have adopted the notarial seal, and the Guaranty is not a sealed instrument.

At the very least, therefore, PIBC's cause of action against Mr. Farouki accrued when he failed to make any payments after October 1997, and the three-year limitations period expired long before PIBC's counterclaim in 2009. As such, the Court finds that the counterclaim is time-

barred as a matter of law, and Mr. Farouki's Motion to Dismiss the Second Amended Counterclaim is GRANTED.[3]

### B. Mr. Farouki's Claim for Declaratory Relief

Mr. Farouki's original claim for declaratory relief is all that remains of this case. Federal Rule of Civil Procedure 56(f) permits a district court, in the absence of a motion and "[a]fter giving notice and a reasonable time to respond," to "grant summary judgment for a nonmovant." Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the [party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Even assuming the truth of every fact alleged by PIBC, and giving PIBC the benefit of all reasonable inferences, the Court has concluded that, as a matter of law, any claim against Mr. Farouki is time-barred by the applicable statute of limitations. Thus, the Court believes that summary judgment is appropriate on Mr. Farouki's claim for declaratory relief. Although the parties have already submitted extensive briefing on the limitations issue, the Court must comply with the letter of Rule 56(f). Accordingly, the parties are hereby notified of the Court's intention to enter summary judgment on Count I of Mr. Farouki's Amended Complaint.

A separate Order consistent with this Memorandum Opinion and setting forth the schedule for replies to the Court's finding under Rule 56(f) shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on September 17, 2013.

---

[3] In contrast to the cases where the Circuit has discouraged granting a motion to dismiss on statute of limitations grounds based upon the complaint alone, *see, e.g.*, *Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981), the parties have had a full opportunity to brief this issue on three occasions—and PIBC was granted leave to amend its complaint in response to briefing on this issue.